IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Global Home Products LLC, et al.,[1] | ) | Case No. 06-10340 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: October 4, 2006, at 4:00 p.m.**
**Hearing Date: October 11, 2006, at 2:00 p.m.**

## APPLICATION PURSUANT TO FED. R. BANKR. P. 2014(a) AND 2016 FOR ORDER UNDER SECTIONS 327(a) AND 328 (a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF PLANTE & MORAN, LLP TO PROVIDE AUDIT SERVICES REGARDING DEBTORS' (I) 401(K) PLAN AND (II) PENSION PLAN FOR <u>CERTAIN ANCHOR HOCKING EMPLOYEES</u> *NUNC PRO TUNC*

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move the Court (the "Application") for entry of an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2014 and 2016, authorizing and approving the retention of Plante & Moran, PLLC ("Plante & Moran"), *nunc pro tunc* to May 15, 2006, to provide audit services regarding the Debtors (i) 401(k) plan and (ii) pension plan for certain Anchor Hocking employees. In support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; and Mirro Operating Company LLC.

31604-001\DOCS_DE:120447.4

## Jurisdiction

1. The Court has jurisdiction to entertain this application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Application is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code.

## Background

3. On April 10, 2006 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). No request has been made for the appointment of a trustee or an examiner and the Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 26, 2006, an official committee of unsecured creditors was appointed by the United States Trustee in the Debtors chapter 11 cases (the "Committee).

4. Global Home Products is a leading designer, marketer and manufacturer of well known, branded consumer and specialty products to retail and hospitality customers and to original equipment manufacturers. As of the Petition Date, Global Home Products operated three primary business divisions through its Anchor Hocking businesses ("Anchor Hocking"), WearEver businesses ("WearEver") and Burnes Group businesses (the "Burnes Group"). Anchor Hocking produces beverageware, cookware, bakeware, home décor items, and glass components for commercial customers. Anchor Hocking's glassware products cross all price

points through retail, specialty, business-to-business, and hospitality channels. WearEver produces metal bakeware, cookware and accessories and is recognized as a leading marketer and manufacturer of multi-branded metal cookware and bakeware products and accessories. WearEver sells metal cookware, bakeware and related accessories throughout North America, principally in the opening and mid-tier price points through retail channels. The Burnes Group designed and sold ready-made picture frames, photo albums, scrapbooks and related home accessories.

5. As of the Petition Date, the Debtors maintained a senior secured revolving line of credit with Wachovia Bank, National Association, as agent acting for the financial institutions party thereto as lenders ("Wachovia"), pursuant to that certain Loan Agreement, dated as of June 22, 2004, as amended (the "Wachovia Loan Agreement"). As of the Petition Date, Wachovia was owed approximately $115 million under the Wachovia Loan Agreement, all under the revolver (the "Wachovia Loan Indebtedness"). The Wachovia Loan Indebtedness is secured by a lien on substantially all of the Debtors' assets, including 100% of the stock held by a Debtor in any of its domestic subsidiaries, and 65% of the stock held by a Debtor in any of its foreign subsidiaries. In addition to the Wachovia Loan, the Debtors also maintained a junior secured term loan and revolving line of credit with Madeline LLC, pursuant to that certain Financing Agreement dated as of April 13, 2004 (the "Madeline Loan Agreement"). As of the Petition Date, Madeline was owed approximately $200 million, all of which is under the term loan (the "Madeline Indebtedness"). The Madeline Indebtedness is secured by a lien in substantially all of the Debtors' assets. In addition to the Wachovia Loan Indebtedness and the

Madeline Indebtedness, the Debtors estimate that their unsecured debt, exclusive of potential contract or lease rejection claims, totals approximately $66 million as of the Petition Date.

6. On the Petition Date, the Debtors filed their motion (the "DIP Loan Motion") for orders authorizing the Debtors to obtain postpetition financing (the "DIP Financing") from Wachovia, as DIP lender (the "DIP Lender"), and to use the DIP Lender's cash collateral. On April 11, 2006, the Court entered its interim order on the DIP Loan Motion (the "Interim Financing Order"). The Court subsequently entered a final order on the DIP Loan Motion on May 4, 2006 (the "Final Financing Order").

7. On May 23, 2006, the Court entered an order, inter alia, approving the sale (the "Sale") of substantially all of the assets of the Burnes Group to C.R. Gibson, Inc ("Gibson"). In addition, the Debtors assumed and assigned certain executory contracts and leases to Gibson as part of the Sale.

8. On August 14, 2006, the Court entered it's *Order Approving Motion of Debtors for the Entry of an Order (I) Approving Sale by the Wearever Debtors of Substantially all of Wearever Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (Docket No. 664). The sale of the Wearever Debtors' assets to Groupe SEB USA closed on August 16, 2006.

## Relief Requested

9.  By this Application, the Debtors seek to employ and retain Plante & Moran, *nunc pro tunc* to May 15, 2006, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to provide audit services (as described below) to the Debtors.

10. The Debtors are familiar with the abilities, professional standing and reputation of Plante & Moran. The Debtors understand that Plante & Moran has a wealth of experience in providing audit services to companies both in and out of bankruptcy proceedings, and enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

11. Plante & Moran has been previously engaged on by the Debtors to provide audit services to the Debtors, and is familiar with the Debtors affairs. Specifically, Plante & Moran has performed audits of the Debtors' 401(k) plan and pension plan for prior years prepetition.

12. Plante & Moran is among the ten largest accounting and management consulting firms in the United States. The services of Plante & Moran are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. Further, Plante & Moran is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

## Scope of Services

13. As part of their responsibility as the managers of the GHP Operating Company, LLC 401(k) Savings Plan and GHP Operating Company, LLC Pension Plan for

Anchor Hocking Union Employees and in preparation for the Form 5500 filing with the Department of Labor, the Debtors engaged Plante & Moran to provide certain Audit Services (as defined below). Specifically, on May 2, 2006, the Debtors and Plante & Moran entered into an engagement letter, under which Plante & Moran agreed to audit the financial statements and supplemental schedules of GHP Operating Company, LLC 401(k) Savings Plan (the "401(k) Engagement Letter"). Furthermore, on May 2, 2006, the Debtors and Plante & Moran entered into an engagement letter, under which Plante & Morgan agreed to audit the financial statements and supplemental schedules of GHP Operating Company, LLC Pension Plan for Anchor Hocking Union Employees (the "Pension Plan Engagement Letter" together with the 401(k) Engagement Letter, the "Engagement Letters"). Copies of the Engagement Letters are attached hereto as Exhibit A.

### A. The 401(k) Engagement Letter

14. Pursuant to the 401(k) Engagement Letter, Plante & Moran audit the financial statements and supplemental schedules of GHP Operating Company, LLC 401(k) Savings Plan (the "Plan") as of an for the year ended December 31, 2005, all of which are to be included in the Plan's Form 5500 filing with the Department of Labor. As part of the audit, Plante & Moran will recommend any adjustments to the Plan's accounting records and, to the extent necessary, will discuss with the Debtors any suggestion concerning the accounting records and financial affairs (the "401(k) Savings Plan Audit").

**B.  The Pension Plan Engagement Letter**

15.  Pursuant to the Pension Plan Engagement Letter, Plante & Moran will audit the financial statements and supplemental schedules of GHP Operating Company, LLC Pension Plan for Anchor Hocking Union Employees as of and for the year ended December 31, 2005, all of which are to be included in the Plan's Form 5500 filing with the Department of Labor. As part of the audit, Plante & Moran will recommend any adjustments to the Plan's accounting records and, to the extent necessary, will discuss with the Debtors any suggestion concerning the accounting records and financial affairs (the "Union Pension Plan Audit," together with the 401(k) Savings Plan Audit, the "Audit Services").

16.  The Debtors believe that Plante & Moran is well qualified and experienced in matters of this kind, and willing to act on behalf of the Debtors subject to the jurisdiction and supervision of the Court.

**Plante & Moran's Disinterestedness**

17.  Plante & Moran has informed the Debtors that, except as may be set forth in the Affidavit of David L. Scheffler, CPA, in Support of Application Pursuant to Fed. R. Bankr. P. 2014(a) and 2016 for Order Under Sections 327(a) and 328 (a) of the Bankruptcy Code Authorizing the Employment and Retention of Plante & Moran, LLP to Provide Audit Services Regarding Debtors' (i) 401(k) Plan and (ii) Pension Plan for Certain Anchor Hocking Employees *nunc pro tunc* (the "Scheffler Affidavit") and attached hereto as <u>Exhibit B</u>, it (i) has not connection with the Debtors, their creditors or other parties in interest in these cases, (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believers it is a "disinterested person"

as defined in section 101(14) of the Bankruptcy Code. Except as otherwise disclosed herein, Plante & Moran is not currently retained by any creditor or party-in-interest in these cases. If any new facts or circumstances are discovered Plante & Moran will supplement its disclosure to the Court.

18. Other than with its own partners and employees, Plante & Moran has not agreed to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

## Terms of Retention

19. The Debtors and Plante & Moran have agreed to a fixed fee of $10,000 for the 401(k) Savings Plan Audit and a fixed fee of $11,500 for the Union Pension Plan Audit (collectively, the "Audit Fees"). The Debtors seek approval of the Audit Fees pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) therefore permits the Court to approve the Audit Fees outlined above and described in the Engagement Letters.

### *Nunc Pro Tunc* Retention

20. Due to the nature of the Audit Fees requested herein – fixed and not hourly - the retention and employment of Plante & Moran, *nunc pro tunc* to May 15, 2006 is appropriate. Plante & Moran was engaged by the Debtors on May 2, 2005 and subsequently

began work for the Debtors on May 15, 2006. The Engagement Letters provide that invoices for the Audit Fees will be delivered to the Debtors on the first date of the audit fieldwork and the Audit Fees are due to Plante & Moran on fifteen (15) day terms. The audit fieldwork under the Engagement Letters began approximately mid-June, 2006, thus the Audit Fees were due to Plante & Moran in the beginning of July, 2006 but have not yet been paid pending Court approval of this Application. The audited financial statement reports for the Union Pension Plan Audit and the 401(k) Savings Plan Audit will not be issued by Plante & Moran until the Audit Fees are paid. To date, the audit services as provided for in the Engagement Letters have not been completed. The audit services of Plante & Moran and the audited financial statement reports prepared by Plante & Moran are necessary for the Debtors to comply with certain filing obligations as the manager of the 401(k) plan and pension plan for certain Anchor Hocking employees. Thus, because of nature of the Audit Fees, in that they fixed and paid only once, and the importance of the audited financial statement reports, the Debtors request the retention of Plante & Moran, pursuant to the terms of the Engagement Letters, *nunc pro tunc* to May 15, 2006.

### Notice

21. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) Wachovia Bank, National Association; (iii) Madeline LLC; (iv) Global Home Products Investors LLC.; (v) counsel to the Official Committee of Unsecured Creditors; and (vi) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

22. No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the Debtors to employ and retain Plante & Moran, *nunc pro tunc* to May 15, 2006, to provide audit services regarding Debtors' (i) 401(k) plan and (ii) pension plan for certain Anchor Hocking employees, and grant such further relief as is just and proper.

Dated: August 23, 2006

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

_____
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Bruce Grohsgal (Bar No. 3583)
Joshua M. Fried (CA Bar No. 181541)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for the Debtors and
Debtors in Possession