# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Global Home Products LLC, et al.,[1] | ) Case No. 06-10340 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF GLOBAL HOME PRODUCTS, LLC, ET AL., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

31604-001\DOCS_SF:54189.12

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

ARTICLE 1   DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW......................................4

  A.   Rules of Interpretation, Computation of Time and Governing Law......................4

  B.   Defined Terms .................................................................................................5

      1.   "Administrative Claim" ...................................................................5

      2.   "Administrative Claims Bar Date" .....................................................6

      3.   "Administrative Claims Bar Date Order"............................................6

      4.   "Allowed"...........................................................................................6

      5.   "Allowed Claim" ...............................................................................7

      6.   "Anchor Hocking Purchase Agreement".............................................7

      7.   "Anchor Holdings Stock" ..................................................................7

      8.   "Available Cash" ...............................................................................7

      9.   "Ballots"............................................................................................7

      10.   "Bankruptcy Code".............................................................................8

      11.   "Bankruptcy Court" ...........................................................................8

      12.   "Bankruptcy Rules" ...........................................................................8

      13.   "Burnes Group Purchase Agreement" .................................................8

      14.   "Business Day" ..................................................................................8

      15.   "Cancelled Options and Warrants".....................................................8

      16.   "Cash".................................................................................................9

      17.   "Chapter 5 Claims"............................................................................9

      18.   "Chapter 5 Claims Recoveries"..........................................................9

      19.   "Chapter 11 Cases" ...........................................................................9

      20.   "Claim" ..............................................................................................9

      21.   "Claims Agent" ................................................................................10

      22.   "Claimant" .......................................................................................10

      23.   "Claims Objection Deadline" ...........................................................10

      24.   "Claims Reserve Account" ...............................................................10

      25.   "Class"..............................................................................................10

      26.   "Committee".....................................................................................10

      27.   "Confirmation" .................................................................................10

      28.   "Confirmation Date".........................................................................11

      29.   "Confirmation Hearing" ...................................................................11

      30.   "Confirmation Order".......................................................................11

      31.   "Consummation" or "Consummate" ................................................11

      32.   "Contingent Claim" .........................................................................11

      33.   "Creditor"........................................................................................11

      34.   "Debtors" .........................................................................................11

      35.   "Debt" ..............................................................................................11

      36.   "Disallowed Claim" .........................................................................12

      37.   "Disbursing Agent" .........................................................................12

31604-001\DOCS_SF:54189.12

38.     "Disclosure Statement" ..........................................................................12
39.     "Disputed Claim" ..................................................................................13
40.     "Disputed Claims Amount" ...................................................................13
41.     "Distribution Dates" .............................................................................14
42.     "Distribution Record Date" ..................................................................14
43.     "Effective Date" ...................................................................................14
44.     "Effective Date Cash" ..........................................................................14
45.     "Entity" .................................................................................................14
46.     "Equity Interests" .................................................................................14
47.     "Estates" ...............................................................................................14
48.     "Excluded Assets" ................................................................................14
49.     "File" or "Filed" ...................................................................................14
50.     "Final Decree" ......................................................................................15
51.     "Final Distribution Date" .....................................................................15
52.     "Final Order" ........................................................................................15
53.     "503(b)(9) Claim" .................................................................................15
54.     "General Bar Date" ...............................................................................15
55.     "GHPI" ..................................................................................................15
56.     "GHPI Equity Interests" .......................................................................15
57.     "GHPI Cash Contribution" ...................................................................16
58.     "Governmental Unit" ............................................................................16
59.     "Holder" ................................................................................................16
60.     "Impaired" ............................................................................................16
61.     "Initial Distribution Date" ...................................................................16
62.     "Insider" ................................................................................................16
63.     "Interim Fee Order" ..............................................................................17
64.     "Lien" ....................................................................................................17
65.     "Litigation" ...........................................................................................17
66.     "Litigation Consultant" ........................................................................17
67.     "Litigation Consultant Contribution" ..................................................18
68.     "Litigation Recoveries" ........................................................................18
69.     "Madeleine" ..........................................................................................18
70.     "Madeleine Collateral Carve Out" .......................................................18
71.     "Madeleine Loan Agreement" ..............................................................19
72.     "Madeleine Secured Claim" .................................................................19
73.     "Net Chapter 5 Claims Recoveries" .....................................................19
74.     "Non-GHPI Equity Interests" ...............................................................19
75.     "PBGC" .................................................................................................19
76.     "PBGC Settlement Agreement " ...........................................................19
77.     "Pension Plan" ......................................................................................19
78.     "Petition Date" ......................................................................................19
79.     "Plan" ....................................................................................................19
80.     "Plan Assets" ........................................................................................20
81.     "Plan Expenses" ....................................................................................20
82.     "Plan Interest Rate" ..............................................................................20
83.     "Plan Supplement" ................................................................................21

84.    "Present Value"................................................................21
85.    "Priority Claim" ...............................................................21
86.    "Priority Tax Claim" .........................................................21
87.    "Pro Rata".......................................................................21
88.    "Professional"..................................................................21
89.    "Professional Fee Claim" ..................................................21
90.    "Proof of Claim" ..............................................................22
91.    "Reclamation Claim" ........................................................22
92.    "Rejection Bar Date" ........................................................22
93.    "Released Parties"............................................................22
94.    "Reorganized Debtor(s)" ...................................................22
95.    "Rights Offering Payment".................................................23
96.    "Schedules"......................................................................23
97.    "Secured Claim" ..............................................................23
98.    "Segregated Claims Reserve Account" ..............................23
99.    "Subsequent Distribution Date"..........................................23
100.   "Subsidiary Equity Interests"..............................................24
101.   "Tax"...............................................................................24
102.   "Unimpaired Claim" .........................................................24
103.   "Unliquidated Claim" ........................................................25
104.   "Unsecured Claim" ...........................................................25
105.   "U. S. Trustee"..................................................................25
106.   "Voting Instructions".........................................................25
107.   "Voting Record Date".........................................................25
108.   "Wearever Purchase Agreement" ......................................25

ARTICLE 2    ADMINISTRATIVE CLAIMS, PROFESSIONAL  FEES AND
             PRIORITY TAX CLAIMS................................................26
A.    Introduction......................................................................26
B.    Administrative Claims .......................................................26
C.    Professional Fee Claims....................................................27
D.    Priority Tax Claims ...........................................................28

ARTICLE 3    CLASSIFICATION AND TREATMENT OF  CLASSIFIED
             CLAIMS AND EQUITY INTERESTS................................29
A.    Summary..........................................................................29
B.    Classification and Treatment of Claims against the Debtors................29
1.    Class 1 – Non-Tax Priority Claims ...................................30
2.    Class 2 – Madeleine Secured Claim.................................31
3.    Class 3 – Other Secured Claims ......................................31
4.    Class 4 – 503(b)(9) Claims ..............................................32
5.    Class 5 – Unsecured Claims ............................................33
6.    Class 6 – Equity Interests and Subsidiary Equity Interests ........34
7.    Class 7 – Cancelled Options and Warrants........................36

ARTICLE 4  ACCEPTANCE OR REJECTION OF THE PLAN ...................................36
   A.  Voting Classes .....................................................................................36
   B.  Acceptance by Impaired Classes .........................................................36
   C.  How to Vote ........................................................................................37

ARTICLE 5  MEANS FOR IMPLEMENTATION OF THE PLAN.............................38
   A.  Available Cash.....................................................................................38
   B.  Handling of Plan Assets and Collection of Plan Proceeds ...................38
   C.  Litigation.............................................................................................40
      1.  Non-Chapter 5 Claims Litigation ...............................................40
      2.  Chapter 5 Claims Litigation........................................................40
   D.  Payment of Plan Expenses....................................................................40
   E.  Distribution of Effective Date Cash......................................................41
   F.  Post-Confirmation Operations of the Reorganized Debtors...................42
   G.  Full and Final Satisfaction ...................................................................42
   H.  Discharge of the Debtors .....................................................................42
   I.  Distribution Procedures .......................................................................43
   J.  Disbursing Agent .................................................................................43
   K.  Claims Reserve Account and Segregated Claims Reserve Account .......44
   L.  Resolution of Disputed Claims .............................................................45
   M.  Reserve Provisions for Disputed Claims ...............................................45
   N.  Allocation of Distributions ..................................................................46
   O.  Rounding..............................................................................................47
   P.  Disputed Payments ..............................................................................47
   Q.  Unclaimed Property .............................................................................48
   R.  Setoffs .................................................................................................48
   S.  Withholding Taxes................................................................................48
   T.  Full Compromise and Settlement of 503(b)(9) Claims ..........................49
   U.  United States Trustee Fees....................................................................49

ARTICLE 6  TREATMENT OF EXECUTORY CONTRACTS AND
           UNEXPIRED LEASES.........................................................................50
   A.  Assumption Or Rejection of Executory Contracts and Unexpired Leases............50
   B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases............51

ARTICLE 7  CONDITIONS PRECEDENT TO CONFIRMATION  OF THE
           PLAN AND TO THE EFFECTIVE DATE .........................................52
   A.  Substantive Consolidation ...................................................................52
   B.  Conditions to Confirmation of the Plan................................................53
   C.  Conditions to the Effectiveness of the Plan ..........................................53
   D.  Effective Date ......................................................................................54

ARTICLE 8  EFFECTS OF CONFIRMATION ......................................................54
   A.  Binding Effect of Plan .........................................................................54
   B.  Limitation of Liability .........................................................................54
   C.  Releases ...............................................................................................55

D.    PBGC Settlement Agreement ..................................................................57
E.    Injunction ..............................................................................................58
F.    Post-Confirmation Liability of the Reorganized Debtors and Disbursing
      Agent .....................................................................................................59

ARTICLE 9    RETENTION OF JURISDICTION ..........................................................60

ARTICLE 10   MISCELLANEOUS .............................................................................61
A.    Revocation of Plan of Reorganization .....................................................61
B.    Severability of Plan Provisions ...............................................................62
C.    Governing Law .......................................................................................62
D.    Cram Down ............................................................................................62
E.    Exhibits and Plan Supplement ................................................................63
F.    Notices ...................................................................................................63
G.    Reservation of Rights ..............................................................................65
H.    Computation of Time Periods ..................................................................66
I.    Defects, Omissions and Amendments ......................................................66
J.    Filing of Additional Documents ...............................................................67
K.    Successors and Assigns ...........................................................................67
L.    Tax Exemption ........................................................................................67
M.    Securities Exemption ...............................................................................68
N.    Plan Interest Rate ...................................................................................68
O.    Implementation .......................................................................................68
P.    Record Date ...........................................................................................68
Q.    Certain Actions ......................................................................................69
R.    Dissolution of Committee ........................................................................69
S.    Waiver of Ten (10) Day Stay ...................................................................70
T.    Substantial Consummation ......................................................................70

## PRELIMINARY STATEMENT

Global Home Products, LLC, and its related debtor affiliates (the "Debtors"), hereby propose the following Plan.[2] Reference is made to the Disclosure Statement accompanying this Plan, including any exhibits thereto, for a discussion of the Debtors' history, business, results of operations and properties, the post-petition sale of substantially all of the Debtors' assets, and for a summary and analysis of the Plan. All Holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully before voting to accept or reject the Plan.

The Plan sets forth a proposal for the satisfaction of all Claims against and Equity Interests and Subsidiary Equity Interests in the Debtors. With the Plan, Creditors and Non-GHPI Equity Interest Holders (as hereinafter defined) will receive a Disclosure Statement that provides information concerning the Debtors and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtors, a summary of what Creditors and Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. Creditors and Equity Interest Holders entitled to vote on the Plan also will receive a Ballot for use in voting to accept or reject the Plan. You should thoroughly review

---

[2] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, before it can be confirmed, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that the Plan meets the applicable legal standards. If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed or converted to liquidating cases under chapter 7 of the Bankruptcy Code. For the reasons set forth in the Disclosure Statement, if the Plan is not confirmed, and if all Creditors holding Claims under section 503(b)(9) of the Bankruptcy Code, do not vote to accept or otherwise object to their treatment under the Plan, the Debtors do not believe that Creditors will receive any distributions on account of their Claims. Consequently, as set forth herein, the Debtors and the Official Committee of Unsecured Creditors believe that it is in the best interests of all creditors to vote to accept the treatment provided for herein.

The Plan and the distributions to the Creditors is made possible by the contribution of up to $8,500,000 of Effective Date Cash by GHPI. As provided below, the Plan provides for the Pro Rata distributions of (a) not less than $1 million to Holders of Class 5 General Unsecured Claims (plus a percentage of certain Chapter 5 litigation recoveries) and (b) $3.5 million to Holders of Allowed Class 4 503(b)(9) Claims. The remainder of the Effective Date Cash will be used to satisfy the Allowed Administrative and Priority Claims, and, if applicable, Class 3 Other Secured Claims. Confirmation and consummation of the Plan is subject to the satisfaction of several conditions, including each of the following:

- There must be sufficient Effective Date Cash to pay Holders of Allowed Administrative Claims and Priority Claims in full, unless alternative treatment is otherwise agreed to by such holders. The Debtors will determine, in their reasonable discretion, whether this condition has been satisfied.

- A further condition of GHPI's agreement to contribute the Effective Date Cash to fund the distributions contemplated under the Plan is that Equity Interests and Subsidiary Equity Interests remain unimpaired except for Non-GHPI Equity Interests. Thus, the Plan contemplates that all Equity Interests and Subsidiary Equity Interests will remain unimpaired except for Non-GHPI Equity Interests.

- All Holders of Non-GHPI Equity Interests will be given an opportunity to subscribe to a rights offering to retain their respective Non-GHPI Equity Interests if they (i) agree, in writing on or before three (3) days prior to the Confirmation Hearing to subscribe to the rights offering and commit to pay their Pro Rata portion of Effective Date Cash in order to retain their Non-GHPI Equity Interests, and (ii) pay the dollar amount of the percentage of Effective Date Cash that is equal to ownership percentage of the subscribing Holder's Non-GHPI Equity Interests in order to retain such Holder's Non-GHPI Equity Interests (the "Rights Offering Payment") to the Reorganized Debtors no later than one (1) day prior to the expected Effective Date. The Debtors shall notify all Holders of Non-GHPI Equity Interest of the expected Effective Date no later than five (5) days prior to the occurrence of such expected Effective Date. Thus, for illustrative purposes only, a holder of a Non-GHPI Equity Interest who currently owns 1% of the equity in Global Home Products LLC would have to subscribe to the rights offering no later than three (3) days prior to the Confirmation Hearing and would have to pay $85,000 in cash (i.e., 1% of $8,500,000) to the Reorganized Debtors no later than one day prior to the expected Effective Date, or such Non-GHPI Equity Interest will be cancelled without the requirement of further action by the Debtors, the Bankruptcy Court or any party in interest.

- All options, warrants and any other contract rights to purchase or acquire any Equity Interests will be cancelled as of the Effective Date without the requirement of further action by the Debtors, the Bankruptcy Court or any party in interest.

## ARTICLE 1

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.    **Rules of Interpretation, Computation of Time and Governing Law**

1.    For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to part includes the whole, except where the context clearly requires otherwise; (g) "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules are controlling, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

4.      The Plan is the product of extensive discussions and negotiations by and between, among others, the Debtors, the Creditors' Committee, Madeleine LLC, and GHPI. Each of the foregoing was represented by counsel who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, Disclosure Statement, and ancillary documents. Accordingly, the rule of contract construction known as "contra proferentum" shall not apply to the interpretation of any provision of this Plan, Disclosure Statement, or any ancillary agreement or document generated in connection herewith.

**B.      Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.      "Administrative Claim" means a Claim for costs and expenses of administration of the Estates under Section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a)

the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331 of the Bankruptcy Code; (c) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (e) administrative claims that were timely filed prior to the Administrative Claims Bar Date; and (f) any Tax Claims incurred by the Debtors after the Petition Date or relating to a tax period which occurs after the Petition Date. The term "Administrative Claim" does not include any 503(b)(9) Claims or Reclamation Claims.

2.    "Administrative Claims Bar Date" means (a) the last date set by the Bankruptcy Court pursuant to any Administrative Claims Bar Date Order for Claimants to file a request for payment of any Administrative Claim that arose during the period specified in such order, or (b) for Administrative Claims which arose after the last period covered by an Administrative Claims Bar Date Order and prior to the Effective Date, such date fixed by the Bankruptcy Court pursuant to the Confirmation Order.

3.    "Administrative Claims Bar Date Order" means any order or orders setting an Administrative Claims Bar Date, which may include the Confirmation Order.

4.    "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by Debtors in its Schedules as other than disputed, contingent or unliquidated and as to which Debtors or other party in interest has not Filed an objection; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been Filed a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in

any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation of amount and nature of Claim executed by the Reorganized Debtors on or after the Effective Date; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely Filed by the Claimant before the applicable Rejection Bar Date for such claim or has otherwise been deemed timely Filed under applicable law; or (e) a Claim that is Allowed pursuant to the terms of this Plan.

5.　　"Allowed Claim" means a Claim of the type described that has been Allowed, and includes, *inter alia*, the Madeleine Secured Claim.

6.　　"Anchor Hocking Purchase Agreement" means that certain *Asset Purchase Agreement*, dated as of March 6, 2007, as amended, by and between Anchor Acquisition, LLC and Anchor Holdings, Inc., on the one hand, and Anchor Hocking Operating Company LLC, Anchor Hocking CG Operating Company LLC, and Global Home Products LLC, on the other hand.

7.　　"Anchor Holdings Stock" means 12% of the issued and outstanding shares of Anchor Holdings, Inc. (subject to dilution as provided in the Anchor Hocking Purchase Agreement) issued to and held by Anchor Hocking CG Operating Company LLC and Anchor Hocking Operating Company.

8.　　"Available Cash" means the aggregate amount of all Cash held by the Debtors on the Effective Date.

9.    "Ballots" mean the ballots upon which Holders of Impaired Claims and Impaired Equity Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

10.    "Bankruptcy Code" means title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time, as applicable to these Chapter 11 Cases.

11.    "Bankruptcy Court" means the United States District Court for the District of Delaware having jurisdiction over these Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of such District Court pursuant to Section 151 of title 28 of the United States Code, the bankruptcy unit of such District Court.

12.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to these Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General, and Local Rules of the Bankruptcy Court.

13.    "Burnes Group Purchase Agreement" means that certain *Asset Purchase Agreement*, dated as of May 1, 2006, by and between C.R. Gibson, Inc., and Burnes Acquisition Inc., Intercraft Company, Burnes Puerto Rico Inc., Burnes Operating Company LLC and 609629 BC, Ltd.

14.    "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

15.    "Cancelled Options and Warrants" means all (i) options, (ii) warrants and (iii) contract rights, to purchase or acquire any equity interests in Global Home Products LLC.

16.   "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

17.   "Chapter 5 Claims" mean all claims and causes of action which the Debtors have or had the power to assert pursuant to section 547 of the Bankruptcy Code.

18.   "Chapter 5 Claims Recoveries" means any Cash or property recovered by the Reorganized Debtors from all or any portion of the Chapter 5 Claims including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

19.   "Chapter 11 Cases" means the jointly administered cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re Global Home Products LLC, et al.*, Case No. 06-10340 (KG), currently pending before the Bankruptcy Court.

20.   "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code (as supplemented by Section 102(2) of the Bankruptcy Code)) against one or more of the Debtors or their property, including, but not limited to: (a) any right to payment from Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

21.    "Claims Agent" means Epiq Bankruptcy Solutions, LLC (f/k/a Bankruptcy Services, LLC), which was appointed as the Debtors' claims, notice and balloting agent, by order entered by the Bankruptcy Court on May 5, 2006 [Docket No. 199].

22.    "Claimant" means the Holder of a Claim.

23.    "Claims Objection Deadline" means the first Business Day that occurs sixty (60) days after the Effective Date.

24.    "Claims Reserve Account" means a segregated, interest-bearing bank account or money market account to be held in trust by the Reorganized Debtors (or such other person or entity designated to serve as the Disbursing Agent) on and after the Effective Date for the purpose of holding the amount of Effective Date Cash to be distributed under the Plan to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Priority Claims, and Allowed Class 3 Claims (if any) after payment of any Plan Expenses in connection therewith.  The Claims Reserve Account will be funded by the Reorganized Debtors on or immediately after the Effective Date with sufficient Effective Date Cash to make distributions to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Priority Claims, and, to the extent applicable, to Allowed Class 3 Claims in accordance with the treatment afforded to such Claims as provided under the Plan.

25.    "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 3 of the Plan.

26.    "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in these Chapter 11 Cases on April 27, 2006.

27.    "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

28.    "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

29.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time

30.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

31.    "Consummation" or "Consummate" means the occurrence of or to achieve the Effective Date.

32.    "Contingent Claim" means any Claim (i) that is listed as contingent in the Schedules, (ii) for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or (iii) that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

33.    "Creditor" means any Holder of a Claim against Debtors that arose on or prior to the Petition Date.

34.    "Debtors" means Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH

Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; and Mirro Operating Company LLC.

35.    "Debt" means liability on a Claim.

36.    "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.  All Disputed Claims that are the subject of a pending objection as of the date on which the Disclosure Statement is approved shall constitute Disallowed Claims for purposes of voting to accept or reject the Plan.

37.    "Disbursing Agent" means the Reorganized Debtors, or such other such person or Entity designated to act as the disbursing agent for the purpose of making the distributions required under the Plan, and may include, without limitation, the Litigation Consultant.  The Confirmation Order shall identify the initial Disbursing Agent or Disbursing Agents and may provide for one or more persons to serve in the capacity of Disbursing Agent.

38.    "Disclosure Statement" means the Debtors' Disclosure Statement for the Plan dated as of October 9, 2007, as amended, supplemented, or modified from time to time,

describing the Plan, that was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

39.    "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a Proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed after the applicable Bar Date for such Claim; (iii) any Contingent Claim or Unliquidated Claim; (iv) any Claim scheduled by the Debtors in the Schedules as disputed, contingent or unliquidated; (v) a Proof of Claim filed in a greater amount, or of a different nature or priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (vi) a Claim that is not listed in the Schedules. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed Allowed as to the portion for which no objection is made.

40.    "Disputed Claims Amount" means the aggregate amount of Disputed Claims that are liquidated. For purposes of calculating distributions of Cash under the Plan, the amount of each Disputed Claim shall be based upon either (i) the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim, (ii) the amount at which the Bankruptcy Court may estimate such Disputed Claim, or  (iii) the amount which the Disbursing Agent determines in its reasonable judgment is the appropriate amount to be reserved for such Disputed Claim.

41.     "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date and the Final Distribution Date.

42.     "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

43.     "Effective Date" means the date selected by Debtors which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article 7 of the Plan have been satisfied, unless waived by the Debtors and, to the extent applicable, Madeleine and GHPI.

44.     "Effective Date Cash" means the aggregate sum of (i) the Madeleine Collateral Carve Out, and (ii) the GHPI Cash Contribution.

45.     "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

46.     "Equity Interests" means the equity interests in Global Home Products LLC, exclusive of any options, warrants, or contract rights to purchase or acquire any such interests in Global Home Products LLC.

47.     "Estates" means the estate of the Debtors in these Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

48.     "Excluded Assets" means any assets not sold pursuant to the Anchor Hocking Purchase Agreement, the Burnes Group Purchase Agreement or the WearEver Purchase Agreement, as the case may be.

49.     "File" or "Filed" means file or filed with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

50.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

51.    "Final Distribution Date" means the date of the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

52.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which has not been reversed, stayed, modified or amended, (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired), and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

53.    "503(b)(9) Claim" shall mean any Claim asserted against any of the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code.

54.    "General Bar Date" means November 15, 2006, the date set by the Bankruptcy Court as the last day for filing a Claim arising prior to the Petition Date against the Debtors in these Chapter 11 Cases other than (i) those Claims expressly excluded from the General Bar Date pursuant to order of the Bankruptcy Court and (ii) Claims whose filing deadlines are otherwise governed by any Rejection Bar Date.

55.    "GHPI" means Global Home Products Investors, LLC.

56.    "GHPI Equity Interests" means all equity interests in Global Home Products LLC held by GHPI.

57.    "GHPI Cash Contribution" means the Cash to be contributed by GHPI on the Effective Date or as soon as practicable thereafter, which together with the Madeleine Collateral Carve Out, will not exceed $8,500,000, unless otherwise agreed in writing by GHPI, and which amounts, after payment of Plan Expenses and funding of the Litigation Consultant Contribution, shall be the distributed in the manner and pursuant to the treatment provided in Articles 2 and 3 of the Plan, to Holders of Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Priority Claims, Allowed Class 3 Secured Claims (but solely to the extent that the Reorganized Debtors select this treatment for any Allowed Class 3 Secured Claim), Allowed Class 4 503(b)(9) Claims, and Allowed Class 5 Unsecured Claims.

58.    "Governmental Unit" means the United States; a state; a commonwealth; a district; a territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title); or other foreign or domestic government.

59.    "Holder" means an Entity holding a Claim, Equity Interest or Subsidiary Equity Interest.

60.    "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

61.    "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, including to Holders of Allowed Class 5 General Unsecured Claims and Allowed Class 4 503(b)(9) Claims, as determined by the Reorganized Debtors.

62.    "Insider" means an insider of any Debtors, as defined in Section 101(31) of the Bankruptcy Code.

63.    "Interim Fee Order" means that certain "Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Expense Reimbursement for Professionals and Reimbursement of Expenses by Committee Members" [Docket No. 10] entered by the Bankruptcy Court on May 4, 2006.

64.    "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind) to secure payment of a debt or performance of an obligation.

65.    "Litigation" means the interests of the Estates or the Reorganized Debtors, as applicable, in any and all claims, rights and causes of action which have been or may be commenced by the Debtors or the Reorganized Debtors, as applicable.  The term "Litigation" includes, without limitation: (i) Chapter 5 Claims; (ii) any action for the turnover of property to the Debtors or the Reorganized Debtors, as applicable; (iii) any action for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Reorganized Debtors, as applicable; (iv) any action for compensation for damages incurred by the Debtors; and (v) equitable subordination actions against Creditors.

66.    "Litigation Consultant" means the Entity or person retained by the Reorganized Debtors, after consultation with the Committee, as of the Effective Date, to oversee and make determinations with respect to the prosecution and settlement of Chapter 5 Claims and to serve as the Disbursing Agent to make distributions to Holders of Class 3, Class 4 and Class 5 Claims in accordance with the terms of this Plan, if appointed to do so by the Reorganized Debtors in

their discretion. The Litigation Consultant shall oversee and make recommendations to the Board of Directors of the Reorganized Debtors, or their representative, with respect to determinations in connection with the prosecution and settlement of any Chapter 5 Claims.

67.    "Litigation Consultant Contribution" shall mean $50,000 to be contributed by GHPI and deposited into the Segregated Claims Reserve Account on the Effective Date, or as soon as practicable thereafter, in order to fund the initial operations of the Litigation Consultant, for payment of Plan Expenses, and payment of other expenses that may be incurred by the Litigation Consultant with respect to the tasks and duties assigned to it in connection with the implementation of the Plan. For the avoidance of doubt, the Litigation Consultant Contribution shall be in addition to, and not part of, the GHPI Cash Contribution.

68.    "Litigation Recoveries" means any Cash or other property received by the Debtors or the Reorganized Debtors, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise. If any Litigation is pursued, the Litigation Recovery will be net of any hourly-based or contingent fee paid to legal counsel to prosecute such Litigation.

69.    "Madeleine" means Madeleine LLC, lender under the Madeleine Loan Agreement.

70.    "Madeleine Collateral Carve Out" means the Cash proceeds of the collateral securing the Madeleine Secured Claim consisting of Available Cash held by the Reorganized Debtors on the Effective Date.

71.    "Madeleine Loan Agreement" means that certain financing agreement dated as of April 13, 2004 by and between Madeleine and certain of the Debtors.

72.    "Madeleine Secured Claim" shall mean the Claim of Madeleine secured by senior Liens on substantially all of the Debtors' assets, exclusive of the thirty-five percent (35%) of the equity held by any Debtor in any of its foreign subsidiaries, all as provided under the Madeleine Loan Agreement, in the Allowed amount of $201,824,678.57 as of the Petition Date.

73.    "Net Chapter 5 Claims Recoveries" means all Chapter 5 Claims Recoveries after the deduction of amounts to be paid for, or deposited to or withheld on account of, or in anticipation of, payment of Plan Expenses incurred by the Reorganized Debtors with respect to any Chapter 5 Claims Recoveries.

74.    "Non-GHPI Equity Interests" means all equity interests in Global Home Products LLC that are not held by GHPI.

75.    "PBGC" means the Pension Benefit Guaranty Corporation.

76.    "PBGC Settlement Agreement " means that certain *Settlement Agreement with Pension Benefit Guaranty Corporation*, dated as of November ___, 2007, by and between the PBGC, Cerberus Capital Management, L.P., and Anchor Hocking CG Operating Company LLC.

77.    "Pension Plan" means the *Anchor Hocking Pension Plan for Union Employees* (formerly GHP Operating Company LLC Pension Plan for Anchor Hocking Union Employees), as described in the PBGC Settlement Agreement.

78.    "Petition Date" means April 10, 2006, the date on which each of the Debtors filed their petitions for relief commencing these Chapter 11 Cases.

79.    "Plan" means this Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

80.    "Plan Assets" means any and all real property or personal property assets, rights or interests of the Debtors, whether tangible or intangible, including, without limitation, the Madeleine Collateral Carve Out and all Litigation and Litigation Recoveries, except as expressly set forth in this Plan.

81.    "Plan Expenses" means the expenses incurred by the Reorganized Debtors or the Disbursing Agent following the Effective Date (including the fees and costs of attorneys and other professionals) for the purpose of (i) prosecuting or otherwise attempting to collect or realize upon the Chapter 5 Claims; (ii) selling or collecting upon any of the Plan Assets; (iii) resolving Disputed Claims and effectuating distributions to Creditors under the Plan; or (iv) otherwise implementing the Plan and closing the Chapter 11 Cases.

82.    "Plan Interest Rate" means the rate of interest determined by the Bankruptcy Court upon Confirmation, if necessary, for purposes of the application of section 1124 (impairment) or section 1129(b) of the Bankruptcy Code (Present Value), as the case may be, to the distributions to certain Creditors under the Plan. The Plan Interest Rate may be different for different Classes of Claims.

83.    "Plan Supplement" means the compilation of pleadings and other documents identified in the Plan or Disclosure Statement that will be filed in the Bankruptcy Court no later than ten (10) days prior to the Confirmation Hearing.

84.    "Present Value" means the present value as of the Effective Date of Cash payments made under the Plan by the Debtors using the Plan Interest Rate.

85.    "Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority under section 507(a) of the Bankruptcy Code.

86.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

87.    "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Claim is included to (ii) the amount of all Allowed Claims in that Class.

88.    "Professional" means an Entity (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 503(b)(3)(F) of the Bankruptcy Code.  Professionals shall included, without limitation, the following Entities:  (i) Epiq Bankruptcy Solutions, LLC; (ii) Basham, Ringe y Correa, S.C.; (iii) Bridgepoint Consulting, LLC; (iv) Conway, Del Genio, Gries & Co., LLC; (v) Deloitte Tax LLP; (vi) Dinsmore & Shohl LLP; (vii) Frost Brown Todd LLC;

(viii) Houlihan Lokey Howard & Zukin Capital; (ix) Capital Solutions Group, Ltd.; (x) Johnson & Associates, Inc.; (xi) Lowenstein Sandler, PC; (xii) Pachulski Stang Ziehl & Jones LLP; (xiii) Pepper Hamilton LLP; (xiv) Plante & Moran LLP; (xv) PricewaterhouseCoopers LLP; and (xvi) Huron Consulting Services LLC.

89.    "Professional Fee Claim" means a Claim of a Professional for compensation and reimbursement of fees and expenses pursuant to Sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

90.    "Proof of Claim" means a proof of claim Filed pursuant to Section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

91.    "Reclamation Claim" means a Claim asserted against any of the Debtors pursuant to section 546(c) of the Bankruptcy Code. For avoidance of doubt, Reclamation Claims do not include 503(b)(9) Claims.

92.    "Rejection Bar Date" means the deadline by which any Entity whose Claim arises from a Court-approved rejection of an executory contract or unexpired lease, in accordance with section 365 of the Bankruptcy Code and pursuant to an order of the Court, must file a proof of claim. The Rejection Bar Date for each such Entity shall be before the later of: (i) the General Bar Date or (ii) 30 days after the date of the order approving the Debtors' rejection of the applicable contract or lease, unless otherwise ordered by the Court.

93.    "Released Parties" means (i) the Debtors; the Reorganized Debtors; and their respective present and former directors, officers, employees, agents financial advisors, attorneys and professionals; (ii) the Committee, its members solely in their capacity as members of the

Committee, its agents, advisors, attorneys, and professionals; and (iii) GHPI, Cerberus Partners L.P., Cerberus Capital Management L.P., Madeleine, and any of their respective present and former officers, directors, managers, employees, agents, advisors, attorneys, professionals and representatives.

94.    "Reorganized Debtor(s)" means, individually or collectively, the Debtors or any of them, on and after the Effective Date.

95.    "Rights Offering Payment" means the dollar amount of the percentage of Effective Date Cash that is equal to the ownership percentage of Equity Interests held by each Holder of a Non-GHPI Equity Interest.

96.    "Schedules" means the schedules of assets and liabilities Filed by each Debtor pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they have been or may be amended and supplemented from time to time, and Debtors' statement of financial affairs Filed with the Bankruptcy Court pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they have been or may be amended and supplemented from time to time.

97.    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien that is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

98.    "Segregated Claims Reserve Account" means a segregated, interest bearing bank account or money market account held in trust by the Reorganized Debtors from and after the

Effective Date for the purpose of holding the amount of Effective Date Cash to be distributed,

after payment of any Plan Expenses in connection with such distributions, to Holders of Allowed

Class 4 503(b)(9) Claims, Allowed Class 5 Unsecured Claims, and to fund the Litigation

Consultant Contribution. The Segregated Claims Reserve Account shall also hold any deposits

by the Reorganized Debtors in respect of the portion of any Net Chapter 5 Claims Recoveries

realized after the Effective Date, if any, for distribution to Holders of Allowed Class 5

Unsecured Claims in accordance with the treatment provided in Article 3 of the Plan.

99.    "Subsequent Distribution Date" means any date after the Initial Distribution Date

upon which date the Disbursing Agent makes a distribution to any Holders of Allowed Claims.

100.    "Subsidiary Equity Interests" means the equity interests in each of GHP Holding

Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor

Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation;

Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC;

Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes

Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; and Mirro Operating

Company LLC.

101.    "Tax" means any tax, charge, fee, levy, impost or other assessment by any

federal, state, local or foreign taxing authority, including, without limitation, income, excise,

property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest,

penalty, or additions attributable to, imposed on or with respect to such assessments.

102.    "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

103.    "Unliquidated Claim" means any Claim (a) listed as unliquidated in the Schedules or (b) for which a Proof of Claim has been Filed with the Bankruptcy Court but was not Filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

104.    "Unsecured Claim" means any Claim against any Debtor or Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim, Priority Claim, 503(b)(9) Claim or a Reclamation Claim.

105.    "U. S. Trustee" means the Office of the United States Trustee for the District of Delaware.

106.    "Voting Instructions" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

107.    "Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a), this date is the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

108.    "Wearever Purchase Agreement" means that certain *Asset Purchase Agreement*, dated as of August 7, 2006, by and between SEB S.A. and Groupe SEB USA, on the one hand, and Mirro Acquisition Inc., Mirro Operating Company, LLC, Mirro Puerto Rico, Inc. and 690649 BC, Ltd., on the other hand.

## ARTICLE 2

## ADMINISTRATIVE CLAIMS, PROFESSIONAL
## FEES AND PRIORITY TAX CLAIMS

### A.    Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Claims in a Class:

### B.    Administrative Claims

Each Holder of an Allowed Administrative Claim, shall receive Cash equal to the Allowed amount of such Claim, unless such Holder shall have agreed to different treatment of such Claim, at the sole option of the Debtors or the Reorganized Debtors, as the case may be: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holders of such Claims and the Debtors or the Reorganized Debtors, as the case may be; (c) with respect to Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), at all appropriate times until the entry of a Final Decree or an order converting or dismissing the case.

Holders of Administrative Claims, including, without limitation, Professionals, requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code that do not file such requests by the deadline provided under the applicable Administrative Claims Bar Date Order shall be forever barred from asserting such claims against the Debtors, their Estates, the Reorganized Debtors, or the successors, assigns, or property of any of them.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court; provided that such objection deadline is at least twenty (20) days after the filing and service of such final fee application.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims that are required to be Filed and are not Filed by the applicable Administrative Claim Bar Date shall be treated as Disallowed Claims and discharged.  Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

C.      **Professional Fee Claims**

Unless a different treatment is agreed upon by the Debtors or the Reorganized Debtors, as the case may be, and the applicable Professionals, the Reorganized Debtors shall pay Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date.  The Bankruptcy Court must also rule on and allow all such Professional Fee Claims before the fees will be owed and paid.  For all such pre-Effective Date Professional Fee Claims, except Bankruptcy Court fees, the fees and expenses of the Claims

Agent, and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed final fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses Allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

The Reorganized Debtors may retain and compensate professionals for services rendered following the Effective Date without order of the Bankruptcy Court.

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must File and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

D.    **Priority Tax Claims**

At the sole option of the Reorganized Debtors, each Holder of an Allowed Priority Tax Claim shall receive one of the following two treatments, unless otherwise agreed by such Holder and the Reorganized Debtors: (i) payment in full of the Allowed Priority Tax Claim without interest from the Petition Date, on the later to occur of (A) the Effective Date, or as soon as practicable thereafter, or (B) the date on which such Claim shall have become an Allowed Claim, or as soon as practicable thereafter; or (ii) deferred cash payments to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the rate of five percent (5%) per annum, or such other rate as may be determined by the

Bankruptcy Court or agreed upon by the Reorganized Debtor(s) and such holder; *provided that,* in the event the Reorganized Debtors choose payment option (ii), the Reorganized Debtors may prepay any such Claims at any time without premium or penalty.

## ARTICLE 3

## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    **Summary**

The categories of Claims, Equity Interests and Subsidiary Equity Interests listed below classify Claims, Equity Interests, and Subsidiary Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim, Equity Interest or Subsidiary Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim, Equity Interest or Subsidiary Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim, Equity Interest, or Subsidiary Equity Interest qualifies within the description of such different Class. A Claim, Equity Interest or Subsidiary Equity Interest is in a particular Class only to the extent that such Claim, Equity Interest or Subsidiary Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

B.    **Classification and Treatment of Claims against the Debtors**

The Plan constitutes a single plan of reorganization for all of the Debtors. The Reorganized Debtors shall be deemed substantively consolidated for voting and distribution purposes pursuant to Article 7 of the Plan, which provides, among other things, that Claims Filed

against any Debtor shall be treated as a single Claim Filed against the Reorganized Debtors. The classification of Claims, Equity Interests, and Subsidiary Equity Interests against and in the Debtors pursuant to the Plan, is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Non-Tax Priority Claims | Impaired | Entitled to Vote |
| Class 2 – Madeleine Secured Claim | Impaired | Entitled to Vote |
| Class 3 – Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 – 503(b)(9) Claims | Impaired | Entitled to Vote |
| Class 5 – Unsecured Claims | Impaired | Entitled to Vote |
| Class 6(A) – GHPI Equity Interests | Unimpaired | Not Entitled to Vote |
| Class 6(B) –Non-GHPI Equity Interests | Impaired | Entitled to Vote |
| Class 6(C) – Subsidiary Equity Interests | Unimpaired | Not Entitled To Vote |
| Class 7 – Cancelled Options and Warrants | Impaired | Not Entitled to Vote |

1.      Class 1 – Non-Tax Priority Claims

        a.      Classification:  Class 1 consists of the Non-Tax Priority Claims against the Debtors.

        b.      Treatment:  The Reorganized Debtors shall pay the Allowed amount of each Class 1 Priority Claim to each Entity holding a Class 1 Priority Claim as soon as practicable following the later of (a) the Effective Date, or (b) the date such Class 1 Priority Claim becomes an Allowed Claim (or as otherwise permitted by law). The Reorganized Debtors shall pay each Entity holding a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; provided, however, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

        c.      Voting:  Class 1 is an Impaired Class and Holders of Class 1 Claims are entitled to vote on the Plan.

2.     Class 2 – Madeleine Secured Claim

　　　a.     Classification:  Class 2 consists of the Madeleine Secured Claim.

　　　b.     Treatment:  The Madeleine Secured Claim shall be deemed an Allowed Claim as of the Effective Date and remain secured by substantially all of the Reorganized Debtors' assets to the same extent and validity as existed prior to the Effective Date pursuant to the Madeleine Loan Agreement, *provided however*, that satisfaction and repayment of the Madeleine Secured Claim by the Reorganized Debtors will be on such terms as may be agreed upon by Madeleine and the Reorganized Debtors and shall be subordinated for distribution purposes to the treatments provided for Allowed Claims under the Plan for payments made from the Claims Reserve Account and Segregated Claims Reserve Account, but solely to the extent thereof.

　　　c.     Voting:  Class 2 is an Impaired Class and the Holder of the Madeleine Secured Claim is entitled to vote on the Plan.

3.     Class 3 – Other Secured Claims

　　　a.     Classification:  Class consists of the Claims of any Creditor secured by a Lien against property of any of the Debtors, other than the Madeleine Secured Claim.

　　　b.     Treatment:  The Debtors do not believe that there are any Class 3 Claims. All Class 3 Claims, if any, are Disputed Claims.  At the sole option of the Reorganized Debtors, each Holder of an Allowed Class 3 Other Secured Claim, if any, shall receive one of the following treatments: (i) the holder of such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such holder in full satisfaction, release, and discharge of such Allowed

Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the

date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim,

or as otherwise agreed between the holder of such Claim and the Reorganized Debtors, the

holder of such Secured Claim will receive a Cash payment equal to the amount of its Allowed

Secured Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the

collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full

satisfaction, release, and discharge of such Secured Claim.

      c.     Voting:  Class 3 is an Impaired Class and Holders of Class 3 Claims, if

any, are entitled to vote on the Plan.

      4.     Class 4 – 503(b)(9) Claims

      a.     Classification:  Class 4 consists of 503(b)(9) Claims

      b.     Treatment:  The Reorganized Debtors shall pay to each Holder of an

Allowed Class 4 503(b)(9) Claim its Pro Rata share of the $3.5 million of Effective Date Cash

allocated for distribution to all Holders of Allowed 503(b)(9) Claims in full satisfaction, release

and discharge of such Claims (a) as soon as practical after the later of (i) the Effective Date, or

(ii) the date on which the Bankruptcy Court enters a Final Order determining or approving all

such Allowed Class 4 503(b)(9) Claims; or (b) in accordance with the terms and conditions of

any agreement between the Holder of an Allowed Class 4 503(b)(9) Claim and the Debtors or the

Reorganized Debtors, as the case may be.  The $3.5 million of Effective Date Cash allocated for

distribution to Allowed Class 4 503(b)(9) Claims shall be the sole and exclusive source of

payment of all Allowed Class 4 503(b)(9) Claims.  In the event that the Holder of an Allowed

Class 4 503(b)(9) Claim does not object to confirmation of the Plan, then such Holder shall be

deemed to have accepted the treatment provided for in the Plan that is different from that set forth in 11 U.S.C. § 1129(a)(9). Any unpaid amount of an Allowed Class 4 503(b)(9) Claim shall be available to the Holder as a setoff, on a dollar for dollar basis and after application of any defenses available to such Holder, against the total dollar amount of any Litigation that may be asserted by the Reorganized Debtors against such Holder of an Allowed Class 4 503(b)(9) Claim.

          c.     Voting: Class 4 is an Impaired Class and Holders of 503(b)(9) Claims are entitled to vote to accept or reject the Plan.

     5.    Class 5 – Unsecured Claims

          a.     Classification: Class 5 consists of the Claims of Holders of Unsecured Claims and Reclamation Claims.

          b.     Treatment: On the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Class 5 Unsecured Claim shall receive in full satisfaction, release, and discharge of its Allowed Claim (i) its Pro Rata distribution of remaining proceeds from the $1 million of Effective Date Cash allocated to Holders of Allowed Class 5 Unsecured Claims after payment of any Allowed Reclamation Claims, and (ii) its Pro Rata share of eighteen percent (18%) of any Net Chapter 5 Claims Recoveries recovered by the Reorganized Debtors pursuant to the terms of this Plan as additional distributions at such times after the Effective Date as deemed appropriate by the Reorganized Debtors in their discretion. The remaining eighty-two percent (82%) of any Net Chapter 5 Claims Recoveries shall be retained by the Reorganized Debtors.

All Reclamation Claims, if any, shall constitute Class 5 Claims. All Reclamation Claims are Disputed Claims because the Debtors do not believe any valid Reclamation Claims can or do exist pursuant to, among other things, applicable law. Solely to the extent that a Reclamation Claim becomes an Allowed Reclamation Claim, the Holder of such Allowed Reclamation Claim shall receive Effective Date Cash equal to the Allowed amount of such Reclamation Claim from the $1 million of Effective Date Cash allocated for distribution to Holders of Class 5 Unsecured Claims (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Allowed Reclamation Claim; or (b) in accordance with the terms and conditions of any agreement between the Holder of such an Allowed Reclamation Claim and the Debtors or the Reorganized Debtors, as the case may be.

c.      Voting: Class 5 is an Impaired Class and Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

6.      Class 6 – Equity Interests and Subsidiary Equity Interests

a.      Classification: Class 6 consists of three subclasses. Class 6(A) consists of all GHPI Equity Interests. Class 6(B) consists of all Non-GHPI Equity Interests. Class 6(C) consists of all Subsidiary Equity Interests.

(b)(1)   Class 6(A): Treatment of GHPI Equity Interests. The Plan shall not alter the legal or equitable rights to which GHPI Equity Interest Holders are entitled pursuant to their GHPI Equity Interests.

Voting: GHPI Equity Interests classified in 6(A) are unimpaired and the holders of such GHPI Equity Interests are not entitled to vote on the Plan.

(b)(2)  <u>Class 6(B): Treatment of Non-GHPI Equity Interests</u>.  All Non-GHPI Equity Interests shall be offered the right to subscribe to a rights offering to purchase and retain their existing Non-GHPI Equity Interests.  In order to participate in the rights offering, each holder of a Non-GHPI Equity Interest must satisfy the following conditions: (i) no later than three (3) days prior to the Confirmation Hearing each holder of a Non-GHPI Equity Interest must commit in writing to purchase its respective non-GHPI Equity Interest and agree in writing to pay to the Reorganized Debtors in Cash on the Effective Date the Rights Offering Payment, and (ii) pay the Rights Offering Payment to the Reorganized Debtors no later than one (1) day prior to the expected Effective Date.  The Debtors shall notify all Holders of Non-GHPI Equity Interests of the expected Effective Date no later than five (5) days prior to the occurrence of such expected Effective Date.  If a Holder of a Non-GHPI Equity Interest fails to satisfy all of the conditions set forth in this paragraph, then such Non-GHPI Equity Interest shall be cancelled as of the Effective Date without the requirement of further action by the Debtors, the Bankruptcy Court or any party in interest.  Additional documentation regarding the aforementioned rights offering will be set forth and filed in the Plan Supplement.

Voting:  Non-GHPI Equity Interests are impaired and the Holders of such Non-GHPI Equity Interests are entitled to vote on the Plan.

(b)(3)  <u>Class 6(C): Treatment of Subsidiary Equity Interests</u>.  All Subsidiary Equity Interests shall remain unimpaired pursuant to the Plan.

Voting:  Subsidiary Equity Interests are unimpaired under the Plan and the Holders of such Subsidiary Equity Interests are not entitled to vote on the Plan.

7.    Class 7 – Cancelled Options and Warrants

a.    Classification:  Class 7 consists of all Cancelled Options and Warrants.

b.    Treatment:  All Cancelled Options and Warrants shall be cancelled as of the Effective Date without the requirement of further action by the Debtors, the Bankruptcy Court or any party in interest.

c.    Voting: Cancelled Options and Warrants are impaired.  Because Holders of Cancelled Options and Warrants will neither receive nor retain any distributions or property, such Holders are deemed to reject the Plan and are therefore not entitled to vote on the Plan.

## ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN

A.    **Voting Classes**

Each Holder of a Claim or Non-GHPI Equity Interest which Claim or Non-GHPI Equity Interest is (i) not the subject of a pending objection or (ii) for which no Proof of Claim was filed in the Bankruptcy Court, but was listed on the Schedules as not contingent, not unliquidated and not disputed, and (iii) and is a member of Class 1, 2, 3, 4, 5 or 6(B) is entitled to vote either to accept or reject the Plan.  Only those votes cast by Holders of Allowed Claims or Non-GHPI Equity Interests in these classes shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

B.    **Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holders designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the

Plan and (b) the Holders (other than any Holders designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**C.    How to Vote**

A form of Ballot is being provided to Creditors in Classes 1, 2, 3, 4 and 5 and Non-GHPI Equity Interest Holders in Class 6(B) by which members of such Classes may vote their acceptance or rejection of the Plan.  To vote on the Plan, please complete the Ballot, as indicated thereon, (1) by indicating that (a) you accept the Plan or (b) reject the Plan and (2) by signing your name and mailing the Ballot in the envelope provided for this purpose.  The Claims Agent will count the Ballots.

IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN _____ Prevailing Eastern Time, on _____, 2007 AT THE FOLLOWING ADDRESS:

**If by overnight courier or hand delivery:**

**Global Home Products LLC et al., Ballot Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**757 Third Avenue, 3rd floor**
**New York, NY 10017**
**Attention:  Laura Campbell**

**If by standard mail (including U.S. Express Mail):**

**Global Home Products LLC et al., Ballot Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station**
**P.O. Box 5014**
**New York, NY 10150-5014**
**Attention:  Laura Campbell**

31604-001\DOCS_SF:54189.12

DO NOT SEND YOUR BALLOT VIA FACSIMILE
OR E-MAIL.

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED
AS DESCRIBED, IT WILL NOT BE COUNTED.  IF YOUR BALLOT IS DAMAGED OR
LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN
REQUEST TO THE ADDRESS SHOWN ABOVE.  FACSIMILE OR ELECTRONICALLY
SUBMITTED BALLOTS WILL NOT BE COUNTED.

## ARTICLE 5

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     **Available Cash**

On or as soon as practical following the Effective Date, the Claims Reserve
Account and the Segregated Claims Reserve Account shall be opened by the Disbursing Agent
and funded in such amounts as provided under the Plan.  The sole source of funding for the
Claims Reserve Account and the Segregated Claims Reserve Account will be from the Effective
Date Cash, provided, however, that each holder of an Allowed Class 5 Unsecured Claim is also
entitled to receive its Pro Rata share of eighteen percent (18%) of any Net Chapter 5 Recoveries.

B.     **Handling of Plan Assets and Collection of Plan Proceeds**

On the Effective Date, the Plan Assets and any other property of the Estates shall
revest in the Reorganized Debtors, free and clear of all Claims and Liens other than those Liens
recognized by this Plan, provided however that (i) Plan Assets shall be held by the Reorganized

Debtors and shall be distributed only in accordance with this Plan, and (ii) except with respect to the Madeleine Secured Claim and any Class 3 Other Secured Claim whose holder retains its Lien on its collateral as provided under Section 3(B)(3)(b)(i) of this Plan, all Plan Assets shall constitute property of the Reorganized Debtors, free and clear of the Claims of any Creditors and Liens provided that the funds deposited in the Claims Reserve Account and Segregated Claims Reserve Account shall be used to fund distributions as provided in this Plan. Any remaining amount of the $4,000,000 in Effective Date Cash, after payment of all Allowed Administrative Claims and Allowed Priority Tax Claims, shall revest in the Reorganized Debtors free and clear of all Claims and Liens other than those Liens reorganized by the Plan. All right, title and interest in any of the Debtors' net operating losses shall be retained exclusively by the Reorganized Debtors. Allowed Claims under this Plan shall be satisfied exclusively and solely from the Effective Date Cash in the amounts provided for in this Plan for distributions to the Holders of such Claims and not from any other Plan Assets, provided, however, that Holders of Allowed Class 5 Claims shall also be entitled to a Pro Rata distribution of any Net Chapter 5 Recoveries at such times deemed appropriate by the Reorganized Debtors after the Effective Date.

The Litigation Consultant shall oversee and make recommendations to the Board of Directors of the Reorganized Debtors, or their representative, with respect to determinations in connection with the prosecution and settlement of any Chapter 5 Claims. Any Net Chapter 5 Claims Recoveries shall be distributed or retained by the Reorganized Debtors pursuant to the terms of the Plan. In addition, from and after the Effective Date, except as otherwise provided in this Plan or in the Confirmation Order, the Reorganized Debtors shall be free to operate without

any limitation or restriction by, and without any requirement to comply with, the Bankruptcy

Code, Bankruptcy Rules, or Guidelines of the United States Trustee. The Effective Date Cash in

the amount of $8,500,000, as allocated by the Plan for distribution to Holders of Allowed Claims

in accordance with the treatment provided to such Holders under this Plan, shall be promptly

delivered to the Disbursing Agent for deposit into the Segregated Claims Reserve Account and

the Claims Reserve Account, as applicable, and such funds shall be held in trust by the

Disbursing Agent for distribution in accordance with the terms of this Plan.

C.      **Litigation**

All Litigation shall be preserved pursuant to section 1123(b) of the Bankruptcy

Code.

1.      Non-Chapter 5 Claims Litigation

Non-Chapter 5 Claims Litigation shall be retained by the Reorganization Debtors

for their sole and exclusive benefit. From and after the Effective Date, all non-Chapter 5 Claims

Litigation may be prosecuted or settled by the Reorganized Debtors in their sole discretion and at

their sole expense. To the extent any non-Chapter 5 Claims Litigation is already pending on the

Effective Date, the Reorganized Debtors as successor to the Debtors may continue the

prosecution of such Litigation.

2.      Chapter 5 Claims Litigation

The Litigation Consultant shall oversee and make recommendations with respect

to the prosecution and settlement of any Chapter 5 Claims. The Reorganized Debtors shall

reasonably cooperate with the Litigation Consultant with respect to the prosecution and/or

settlement of any Chapter 5 Claims. The Litigation Consultant shall be responsible for

prosecuting such Chapter 5 Claims, on the Reorganized Debtors' behalf, provided however, that the commencement of any actions, litigation and any prosecution thereof is subject to the review and approval of the Reorganized Debtors' Board of Directors. On or soon as practicable after the Effective Date, the Litigation Consultant Contribution shall be deposited into the Segregated Claims Reserve Account in order to fund the initial operations of the Litigation Consultant. Any fees and expenses incurred by the Litigation Consultant in excess of the Litigation Consultant Contribution in respect to the prosecution, settlement or analysis of the Chapter 5 Claims shall be paid solely from gross proceeds of any Chapter 5 Claims Recoveries, unless otherwise agreed by the Reorganized Debtors. Eighteen percent (18%) of any Net Chapter 5 Claims Recoveries shall be deposited into the Segregated Claims Reserve Account for distribution to Holders of Allowed Class 5 Unsecured Claims in the manner provided under the Plan. The remaining eighty-two percent (82%) of any Net Chapter 5 Claims shall be retained by the Reorganized Debtors.

## D.    Payment of Plan Expenses

In accordance with the terms of this Plan, all Plan Expenses may be paid by the Disbursing Agent(s) from the Claims Reserve Account or Segregated Claims Reserve Account, as applicable, without further notice to Creditors or approval of the Bankruptcy Court. Plan Expenses allocable to the satisfaction of Allowed Administrative Claims, Priority Tax Claims, Class 1 Priority Claims, or Class 3 Other Claims pursuant to this Plan shall be paid exclusively from the Claims Reserve Account. Plan Expenses allocable to the satisfaction of Class 4 and Class 5 Claims pursuant to this Plan, as well as payment Plan Expenses relating to the prosecution of Chapter 5 Recoveries and payment of any fees or expenses incurred by the Litigation Consultant, shall be paid exclusively from the Segregated Claims Reserve Account.

E.     **Distribution of Effective Date Cash**

Unless otherwise agreed by the Reorganized Debtors, Madeleine and GHPI, the Effective Date Cash allocated to satisfy Claims in accordance with, and subject to, the provisions of this Plan, shall be the sole and exclusive source of distributions to Holders of Claims; provided however, that the Disbursing Agent shall only distribute such Effective Date Cash to the Holders of Allowed Claims in such amounts and at such times as are set forth in this Plan. No payments or distributions shall be made by the Disbursing Agent on account of Disputed Claims unless and to the extent such Claims become Allowed Claims. Any Effective Date Cash reserved for payment of any Disputed Claims will be held in the Claims Reserve Account or the Segregated Claims Reserve Account, as applicable, by the Disbursing Agent in accordance with this Plan pending resolution of such Disputed Claims.

F.     **Post-Confirmation Operations of the Reorganized Debtors**

The Reorganized Debtors shall operate their business and generally administer the Plan, prosecute any Litigation , hold and/or dispose of the Anchor Holdings Stock in accordance with the sale order approving the Anchor Hocking Purchase Agreement, the Anchor Hocking Purchase Agreement and the stockholders agreement executed in connection therewith. The Plan Supplement shall disclose the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Reorganized Debtors.

G.     **Full and Final Satisfaction**

Commencing upon the Effective Date, the Disbursing Agent shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtors shall

be deemed fixed and adjusted pursuant to this Plan and the Debtors shall have no further liability on account of any Claims or Interests except as set forth in this Plan. All payments and all distributions made by the Disbursing Agent under and in accordance with the Plan shall be in full and final satisfaction, settlement, release, and discharge of all Claims.

## H.    Discharge of the Debtors

Except as otherwise provided in the Plan or in the Confirmation Order, rights afforded in, and all consideration distributed under, this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties. Regardless of whether property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtors shall each be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is Allowed under Section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted this Plan.

## I.    Distribution Procedures

Except as otherwise agreed by the Holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Disbursing Agent under the Plan shall be distributed in such amounts and at such times as is reasonably prudent as determined by the Disbursing Agent. On the Effective Date, or as soon as practicable thereafter, the Disbursing Agent shall: (a)

establish and fund the Segregated Claims Reserve Account and the Claims Reserve Account

from the Effective Date Cash in accordance with the provisions of this Plan; and (b) promptly as

practicable pay, in full satisfaction of their respective claims, the Holders of (i) Allowed

Administrative Claims, (ii) Allowed Priority Tax Claims, and (iii) Allowed Class 1, Class 4 and

Class 5 Claims and (iv) Allowed Class 3 Claims, but solely to the extent this option is selected

by the Reorganized Debtors as treatment of any Allowed Class 3 Claim in accordance with and

as provided for under the Plan.

The Disbursing Agent shall make the Cash payments to the Holders of Allowed

Claims: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the

Disbursing Agent in its sole discretion, or by wire transfer from a domestic bank, at the

Disbursing Agent's option, and (b) by first-class mail (or by other equivalent or superior means

as determined by the Disbursing Agent).

**J.    Disbursing Agent**

The Disbursing Agent may employ or contract with other entities to perform the

obligations created under the Plan. Any third party Disbursing Agent shall receive reasonable

compensation for services rendered and reimbursement for expenses incurred in connection with

this Plan or any functions or responsibilities adopted under the Plan and which amounts may be

deducted from the Segregated Claims Reserve Account as Plan Expenses. The Disbursing Agent

shall be empowered to (i) effect all actions and execute all agreements, instruments, and other

documents necessary to perform its duties under the Plan, (ii) make all distributions

contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities,

and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the

Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The Reorganized Debtors may, in their discretion, select the Litigation Consultant to serve as the Disbursing Agent. Any expenses with respect to the foregoing shall be from the Litigation Consultant Contribution as Plan Expenses unless otherwise agreed by the Reorganized Debtors and Madeleine.

**K.      Claims Reserve Account and Segregated Claims Reserve Account**

On or as soon as practicable after the Effective Date, the Disbursing Agent shall (a) create and fund both the Claims Reserve Account and Segregated Claims Reserve Account from Effective Date Cash to satisfy all Allowed Claims pursuant to the treatment provided under Article 3 of the Plan, and (b) periodically deposit the portion of Net Chapter 5 Claims Recoveries allocable to Holders of Allowed Class 5 Claims pursuant to Article 3 of this Plan into the Segregated Claims Reserve Account for distribution to Holders of Allowed Class 5 Claims in the manner provided under the Plan.

**L.      Resolution of Disputed Claims**

The Reorganized Debtors may object to any Claims at any time through the expiration of the Claims Objection Deadline. Unless otherwise provided in the Confirmation Order, subject to Section 5(M) below, the Reorganized Debtors shall be authorized to settle, or withdraw any objections to, any Disputed Claim following the Confirmation Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

## M.     Reserve Provisions for Disputed Claims

The Disbursing Agent shall implement the following procedures with respect to the allocation and distribution of Cash in the Segregated Claims Reserve Account and the Claims Reserve Account, to the Holders of Disputed Claims that become Allowed Claims:

(i)      Cash respecting Disputed Claims shall not be distributed, but, if necessary, shall be withheld by the Disbursing Agent in an amount equal to the amount of the distributions that would otherwise be made to the Holders of such Claims if such Claims had been Allowed Claims, based on the Disputed Claims Amount.

(ii)     Where only a portion of a Claim is Disputed, at the option of the Reorganized Debtors or Disbursing Agent, as applicable, interim or partial distributions may (but are not required to) be made with respect to the portion of such Claim that is not Disputed.

(iii)    The Bankruptcy Court may estimate the amount of any Disputed Claim that is either a contingent or unliquidated Claim, or as otherwise permitted pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be an Allowed Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of distribution under this Plan. In lieu of estimating the amount of any Disputed Claim that is either a contingent or unliquidated Claim, or as otherwise permitted under section 502(c) of the Bankruptcy Code, the Bankruptcy Court or the Disbursing Agent may determine the Disputed Claims Amount to be reserved for such Disputed Claim, or such amount may be fixed by agreement in writing by and between the Reorganized Debtors and the Holder thereof.

(iv)     When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the Holder of such Allowed Claim, in accordance with the provisions of this Plan, Cash equal to the amount of Cash set aside for such Disputed Claim within the applicable sub-account of the Claims Reserve Account or Segregated Claims Reserve Account, but in no event shall such Holder be paid more than the amount that would otherwise have been paid to such Holder if the Claim (or the Allowed portion of the Claim) had not been a Disputed Claim.

(v)      Interim distributions may be made from time to time to the Holders of Allowed Claims prior to the resolution by Final Order or otherwise of all Disputed Claims.

(vi)     No Holder of a Disputed Claim shall have any Claim against the Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim.  In no event shall any Holder of a Disputed Claim be entitled to receive (under the Plan or otherwise) from the Debtors, the Reorganized Debtors, the Segregated Claims Reserve Account or the Claims Reserve Account any payment (x) which is greater than the amount reserved for such Claim by the Bankruptcy Court pursuant to the Plan, or (y) except as otherwise permitted under the Plan, of interest or other compensation for delays in distribution.  In no event shall the Reorganized Debtors have any responsibility or liability for any loss to or of any amount reserved under the Plan.

(vii)    To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Claim Amount reserved for such Disputed Claim and the Segregated Claims Reserve Account and the Claims Reserve Account contain sufficient Cash to pay any unpaid but Allowed Claims under the Plan, then the resulting surplus of Cash shall be retained in the Segregated Claims Reserve Account and the Claims Reserve Account and shall be distributed in accordance with the provisions of this Plan.

## N.     Allocation of Distributions

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## O.     Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

P.      **Disputed Payments**

In the event of any dispute between and among Creditors as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such Entity, instead hold such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

Q.      **Unclaimed Property**

Any entity which fails to claim any Cash within 120 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, including forfeiture of any right to receive any subsequent distribution under the Plan. Upon forfeiture, such Cash (including interest thereon) shall be deposited into the Segregated Claims Reserve Account or the Claims Reserve Account, as applicable, to be distributed to the Holders of Allowed Claims in accordance with the provisions of this Plan. Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors, the Reorganized Debtors, or the Disbursing Agent or any Holder of an Allowed Claim to whom distributions are made by the Disbursing Agent, or the property of any of them.

R.      **Setoffs**

Nothing contained in this Plan shall constitute a waiver or release by the Debtors and/or Reorganized Debtors of any right of setoff or recoupment the Debtors and/or Reorganized Debtors may have against any Creditor, Equity Interest Holder or Subsidiary Equity Interest Holder.

S.     **Withholding Taxes**

Pursuant to section 346(f) of the Bankruptcy Code, the Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.

T.     **Full Compromise and Settlement of 503(b)(9) Claims**

As set forth in Section 3(B)(4) of this Plan, any unpaid amount of a Allowed 503(b)(9) Claim shall be available to the Holder as a setoff, on a dollar for dollar basis and after application of any defenses available to such Holder, against the total dollar amount of any Litigation that may be asserted by the Reorganized Debtors against such Holder of an Allowed 503(b)(9) Claim.

To the extent required, the Plan shall constitute a compromise and settlement of Allowed 503(b)(9) Claims with each such Claimant who does not object in writing to the treatment proposed for it with respect to its Allowed 503(b)(9) Claim.  The Confirmation Order will constitute an order under Bankruptcy Rule 9019 compromising and settling Allowed 503(b)(9) Claims.

U.     **United States Trustee Fees.**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date.  Thereafter, the Reorganized Debtors shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Cases.

## ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption Or Rejection of Executory Contracts and Unexpired Leases**

Each executory contract and unexpired lease entered into by Debtors prior to the

Petition Date that has not previously expired or terminated pursuant to its own terms shall be

deemed rejected pursuant to Section 365 of the Bankruptcy Code, except with respect to

executory contracts or unexpired leases that: (i) were previously assumed or rejected by prior

orders of the Bankruptcy Court, (ii) are subject to a pending motion to assume or reject, pursuant

to section 365 of the Bankruptcy Code, on the Confirmation Date, or (iii) are identified in any

Plan Supplement filed by the Debtors as (A) a contract to be assumed by one or more of the

Reorganized Debtors or (B) a contract that will neither be assumed nor rejected, and which will

ride through the Chapter 11 cases and will not be altered or modified by this Plan.

Nothing in this Article 6 shall be construed as an acknowledgement that a

particular contract or agreement is executory or is properly characterized as a lease or an

executory contract, as the case may be.  The Confirmation Order shall constitute an order of the

Bankruptcy Court approving such rejections (or such assumptions, as the case may be) pursuant

to Section 365 of the Bankruptcy Code, as of the Effective Date.  The non-Debtors parties to any

rejected personal property leases shall be responsible for taking all steps necessary to retrieve the

personal property that is the subject of such executory contracts and leases.

To the extent that any contract is identified on any Plan Supplement filed by the

Debtors as a contract to be assumed by one or more of the Reorganized Debtors pursuant to

section 365(a) of the Bankruptcy Code (an "Assumed Contract"), the Debtors shall serve the

affected counterparty to each Assumed Contract with a proposed cure notice substantially in the form of **Exhibit A** attached hereto on or prior to fifteen (15) days before the Confirmation Hearing (the "Cure Notice"). The Cure Notice shall state the date, time and place of the Confirmation Hearing as well as the date by which any objection to the assumption and assignment of the Assumed Contract must be filed and served. The Bankruptcy Court shall resolve any objections to the assumption of any Assumed Contract at the Confirmation Hearing, or at such later date as scheduled by the Bankruptcy Court. The Cure Notice will identify the amounts, if any, the Debtors believe are owed to each counterparty to an Assumed Contract to cure any monetary defaults under section 365(b)(1) of the Bankruptcy Code (the "Cure Amounts").

Payment of any Cure Amounts shall be the sole responsibility of the Reorganized Debtors and shall be made on or before ten (10) days after the Effective Date. Payment of the Cure Amounts (if any) shall (a) effect a cure of all defaults existing as of the Effective Date; (b) compensate for any actual pecuniary loss to the counterparty to the Assumed Contract resulting from such default, (c) together with the assumption of the Assumed Contract, constitute adequate assurances of future performance thereof, and (d) shall be forever binding on the counterparty to the Assumed Contract. The Debtors may elect not to assume any Assumed Contract at any time before or on the Effective Date by serving notice to the affected counterparty of the Assumed Contract of such election.

## B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be Filed with the

Bankruptcy Court within thirty (30) days after the earlier of the date of the Effective Date or

entry of an order of the Bankruptcy Court approving such rejection. Any Claims arising from

the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan

that is not Filed within such times will be forever barred from assertion against Debtors, the

Reorganized Debtors, the Estate, or the property of any of them. All such Claims for which

Proofs of Claim are timely and properly Filed and ultimately Allowed will be treated as Class 5

Unsecured Claims subject to the provisions of Article 3 hereof. Notwithstanding the foregoing,

nothing in this Plan shall be deemed to extend or otherwise affect any bar date or deadline

ordered by the Court with respect to the filing of any Claims for rejection damages for executory

contracts and unexpired leases previously rejected by the Debtors.

## ARTICLE 7

### CONDITIONS PRECEDENT TO CONFIRMATION
### OF THE PLAN AND TO THE EFFECTIVE DATE

A.    **Substantive Consolidation**

On the Effective Date, the Debtors will be deemed substantively consolidated

solely for voting and distribution purposes only under this Plan. The Debtors shall continue to

maintain their separate corporate existences for all purposes other than with respect to voting on

the Plan and the treatment of Claims under this Plan and any associated distributions thereunder.

Pursuant to the Confirmation Order, on the Effective Date, (i) all intercompany claims by and

against any Debtor will be deemed withdrawn and disallowed for distribution purposes pursuant

to this Plan; (ii) all Plan Assets to be used for distributions to Creditors of any of the Debtors will

be treated as though they were merged into the Reorganized Debtors; (iii) any obligation of any

Debtor and all guarantees thereof executed by, or joint liability of, any of the Debtors will be treated as one obligation of the Reorganized Debtors for distribution purposes pursuant to this Plan; and (iv) any Claims filed against any Debtors shall be treated as a single Claim filed against the Reorganized Debtors for distribution purposes pursuant to the Plan. The substantive consolidation of the Debtors for voting and distribution purposes shall not affect or impair any rights, Claims or remedies or defenses of (or between) the separate Debtors as of the Petition Date, including with respect to any Litigation.

**B.    Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the Court entering the Confirmation Order, in form and substance reasonably acceptable to the Debtors, Madeleine and GHPI, approving the Plan in substantially the form filed. If the Court does not enter the Confirmation Order, then the Debtors may, at their option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect. Provided no stay of the Confirmation Order is then in effect, this Plan shall become effective on the Effective Date.

**C.    Conditions to the Effectiveness of the Plan**

Unless otherwise waived by the Debtors and Madeleine and GHPI, the effectiveness of the Plan is conditioned on the funding of the Plan in an amount not to exceed $8,500,000 in Effective Date Cash for distribution to Holders of Allowed Claims pursuant to the treatment provided in Article 3 of this Plan with respect to such Claims, inclusive of (i) the $3.5 million of the Effective Date Cash to be distributed, Pro Rata, to Holders of Allowed Class 4 503(b)(9) Claims, and (ii) the $1 million in Effective Date Cash to be distributed, Pro Rata, to Holders of Allowed Class 5 Unsecured Claims. The determination of whether the condition to

the effectiveness of the Plan described in this paragraph has been satisfied shall be made exclusively by the Debtors.

Further conditions to the effectiveness of the Plan shall be entry of a Confirmation Order and the execution and delivery of all related documents and instruments in form and substance reasonably satisfactory to the Debtors, GHPI and Madeleine.

Notwithstanding anything to the contrary, Madeleine and GHPI reserve the right to withdraw the proposed GHPI Cash Contribution if the amount of Effective Date Cash required to fund the distributions under the Plan exceeds $8,500,000.

**D.    Effective Date**

Provided no stay of the Confirmation Order is then in effect and all of the conditions to the effectiveness of the Plan in this Article 7 have been met or waived, this Plan shall become effective on the Effective Date.

## ARTICLE 8

## EFFECTS OF CONFIRMATION

**A.    Binding Effect of Plan**

The provisions of the confirmed Plan shall be binding on and inure to the benefit of the Debtors, all present and former Holders of Claims against and Equity Interests and Subsidiary Equity Interests in the Debtors, whether or not such Holders will receive or retain any property or interest in property under the Plan, their respective successors and assigns, including, without limitation, the Reorganized Debtors, and all other parties in interest in the Chapter 11 Cases, to the maximum extent permitted by applicable law, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or

not the Claim of such Creditor or the Interest of such Equity Interest Holder is Impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be as fixed and adjusted pursuant to this Plan.  Pursuant to Section 8(L) of the Plan, with respect to any Taxes of the kind specified in Bankruptcy Code section 1146 this Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or Governmental Unit or parish in which any instrument related to this Plan or related to any transaction contemplated under this Plan is to be recorded.

**B.      Limitation of Liability**

The Debtors, the Disbursing Agent, the Committee, GHPI, Cerberus Partners L.P., Cerberus Capital Management L.P., Madeleine and each of their respective present and former officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives, will neither have nor incur any liability to any entity for any action taken in good faith or omitted in good faith to be taken in connection with or related to the Chapter 11 Cases or the formulation, preparation, dissemination, solicitation, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Cases; provided, however, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan against the Reorganized Debtors.

**C.      Releases**

As part of the Plan, the releases set forth below shall be granted pursuant to this Plan and the Confirmation Order:

a.      <u>Debtors and Committee Releases</u>

Except to the extent provided in Section 8.D below, on the Effective Date (i) the Committee, the Debtors, their estates, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives, shall be deemed to have released and discharged GHPI, Cerberus Partners, L.P., Cerberus Capital Management, L.P., Madeleine (collectively, the "Cerberus Released Parties"), and any of their affiliates and present and former officers, directors, managers, shareholders, agents, representatives, consultants, advisors, accountants, counsel, and employees, and the past and present members of the Board of Directors of each of the Debtors from any and all claims, causes of action, demands, losses, whether known or unknown, in law or equity, against any of the Cerberus Released Parties or any past or present member of the Board of Directors of each of the Debtors, based in whole or in part upon any act or omission arising from or in connection with or in any way relating to the Debtors; and (ii) the Debtors, their estates and all creditors, and their respective officers and directors, shareholders, agents, representatives, consultants, counsel and employees, shall be deemed to have released and discharged the Committee and each Committee member (solely in such capacity) from any and all claims, causes of action, demands, losses, whether known or unknown, in law or equity, against each other based in whole or in part upon any act or omission arising from or in connection with or in any way to the Debtors.

      b.    <u>Other Releases</u>

Except to the extent provided in Section 8.D below, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by applicable law, each Holder of a Claim or Equity Interest that affirmatively voted in favor of the Plan, shall have agreed to forever release, waive and discharge the Released

Parties of and from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtors (including Reorganized Debtors), the Chapter 11 Cases, or the Plan whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transition, event or other occurrence taking place on or prior to the Effective Date in connection with the Chapter 11 Cases, or the formulation, preparation, dissemination, solicitation, implementation, Confirmation or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 cases; provided, however, that the foregoing shall not operate as a waiver or release from any causes of action arising out of (i) any express post-Effective Date contractual obligation owing by any such present or former director, officer, employee, agent, financial advisors, attorneys or professional of the Debtors or the Committee or its members, agents, advisors, attorneys or, (ii)  the willful misconduct or gross negligence of such present or former director, officer, employee, agent, attorneys or professional of Debtors or the Committee or its members, agents, advisors or attorneys, as determined by Final Order of a court of competent jurisdiction.

**D.     PBGC Settlement Agreement**

Notwithstanding Section 8.C above, nothing in this Plan shall constitute a release to any Claim asserted by the PBGC against any non-Debtor third party for breach of fiduciary duty with respect to the Pension Plan or its assets, to the extent set forth in Section 4.b of the PBGC Settlement Agreement.

## E.    Injunction

Except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtors, the Reorganized Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any of the Released Parties, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Released Parties, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest, except to the extent provided in the Plan with respect to any potential setoff by a Holder of Allowed 503(b)(9) Claim of any unpaid amount of such Allowed 503(b)(9) Claim to the extent provided in Section 5(U) of this Plan; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity

Interest. Nothing contained in this section shall prohibit the Holder of a timely-filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Reorganized Debtors under this Plan. Any person or Entity injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees from the willful violator. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and Non-GHPI Equity Interests and other debts and liabilities against the Debtors, pursuant to section 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against any Debtor at any time, to the extent such judgment relates to a discharged Claim or terminated Equity Interest.

## F.      Post-Confirmation Liability of the Reorganized Debtors and Disbursing Agent

The Reorganized Debtors, Disbursing Agent and their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals shall not be liable for any liability, loss, damage, claim, cause of action, cost and expense, including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims, Equity Interests or Subsidiary Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under this Plan, except that the Reorganized Debtors, the Disbursing Agent and their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals may be

liable for actions or inactions that are grossly negligent or which constitute willful misconduct.

Any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent

therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct.

## ARTICLE 9

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such

jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.      To hear and determine any and all objections to the allowance of a Claim, actions

to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a

particular Class under the Plan;

2.      To adjudicate any disputes or issues in connection with the administration of the

Plan;

3.      To liquidate any Disputed Claims;

4.      To hear and determine any and all adversary proceedings, contested matters or

applications pending on the Effective Date;

5.      To hear and determine any and all motions and/or objections to fix and allow any

Claims arising therefrom;

6.      To hear and determine any and all applications by Professionals for an award of

Professional Fees;

7.      To enable the Reorganized Debtors to commence and prosecute any Litigation

which may be brought after the Effective Date;

8.    To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document or instrument contemplated by the Plan;

9.    To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

10.    To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.    To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; and

12.    To close the Chapter 11 Cases when administration of the cases has been completed.

## ARTICLE 10

## MISCELLANEOUS

### A.    Revocation of Plan of Reorganization

The Debtors reserve the right, with the prior consent of Madeleine and GHPI, to revoke and withdraw the Plan at any time on or before the Confirmation Date.  If the Debtors revoke or withdraw the Plan pursuant to this section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors

or any other entity or to prejudice in any manner the rights of the Debtors or any entity in any further proceedings involving the Debtors.

**B.    Severability of Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, to the extent permitted by applicable law and with the consent of the Debtors and Madeleine and GHPI, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is governing, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware.

**D.    Cram Down**

Section 1129(b) allows for Confirmation of the Plan if it does not unfairly discriminate and is fair and equitable with respect to each Class of Claims or Non-GHPI Equity

Interests that is Impaired under and has not accepted the Plan.  To the extent required, the

Debtors seek Confirmation of the Plan pursuant to 1129(b) of the Bankruptcy Code on the basis

that the Plan is fair and equitable and does not discriminate unfairly as to the holders Claims and

Non-GHPI Equity Interests in Classes 1, 3, 6(B) and 7.

**E.**     **Exhibits and Plan Supplement**

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure

Statement are, by this reference, hereby incorporated into the Plan.  The final version of any

Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in

the forms attached hereto or thereto.  The Plan Supplement will be filed with the Bankruptcy

Court no later than ten (10) days prior to the commencement of the Confirmation Hearing.  The

Debtors reserve the right to make nonsubstantive changes and corrections to such Exhibits in

advance of the Confirmation Hearing.  If any Exhibits are changed or corrected, the replacement

Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation

Hearing.

**F.**     **Notices**

All notices required or permitted to be made in accordance with the Plan shall be

in writing and shall be delivered personally or by nationally recognized overnight or next-day

courier service, first class mail or via facsimile with electronic confirmation of receipt as

follows:

<u>The Reorganized Debtors</u>
Global Home Products LLC
2948 McLemore Circle
Franklin, TN 37064
Attention:  Ronald F. Stengel

Counsel for the Debtors
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Attn:  Laura Davis Jones, Esquire
Attn:  David Bertenthal, Esquire
Attn:  Bruce Grohsgal, Esquire
Attn:  Joshua Fried, Esquire

Counsel for the Unsecured Creditors Committee
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
Attn:  Sharon Levine, Esquire
Attn:  Bruce Buechler, Esquire

      and

Pepper Hamilton LLP
1313 Market Street, Suite 5100
Wilmington, Delaware 19801
Attn:  David M. Fournier, Esquire

Counsel for Madeleine L.L.C.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E., Suite 2400
Atlanta, Georgia 30308
Attn:  Jesse H. Austin, III, Esquire

      and

Morris, Nichols, Arsht & Tunnell LLP
Chase Manhattan Centre
1201 North Market Street, 18th Floor
Wilmington, Delaware 19801
Attn:  Robert J. Dehney, Esquire

Counsel for Global Home Products Investors LLC, Cerberus
Partners, L.P. and Cerberus Capital Management, L.P.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY  10022

Attn:  Lawrence V. Gelber, Esquire
Attn:  Sophie S. Kim, Esquire

        and

Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, Delaware 19801
Attn:  Adam G. Landis, Esquire
Attn:  Kerri Mumford, Esquire

<u>Office of the United States Trustee</u>
Office of the United States Trustee
  for the District of Delaware
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn:  Mark Kenney, Esquire

## G.    Reservation of Rights

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

### H.    Computation of Time Periods

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

### I.    Defects, Omissions and Amendments

The Debtors may, with the prior consent of Madeleine and GHPI, approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Debtors have complied with Bankruptcy Code section 1125 and, after notice and a

hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

## J.    Filing of Additional Documents

The Debtors shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## K.    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

## L.    Tax Exemption

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtors or the Disbursing Agent of the Debtors' property in implementation of or as contemplated by this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit or parish in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## M.   Securities Exemption

Any rights issued under, pursuant to or in effecting this Plan, and the offering and issuance thereof by any party, including without limitation, the Reorganized Debtors or the Disbursing Agent, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, section 1145 of the Bankruptcy Code.

## N.   Plan Interest Rate

If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in this Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

## O.   Implementation

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

## P.   Record Date

To the extent a record date is required for implementation of this Plan, except as otherwise specifically provided herein, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

Q.     **Certain Actions**

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtors under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the states in which the Debtors are chartered, organized or incorporated, without any requirement of further action by the directors and stockholders of the Debtors.

Effective upon the Effective Date, each of the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

R.     **Dissolution of Committee**

Upon the earlier to occur of (i) the Claims Objection Deadline, or (ii) the date upon which the Reorganized Debtors notify the Committee that all objections to Claims, if any, have been filed with the Bankruptcy Court, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases. The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered or expenses

incurred after the date on which the Committee is dissolved, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to Section 2(C) of the Plan.

**S.      Waiver of Ten (10) Day Stay**

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the ten (10) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the ten (10) day stay of Bankruptcy Rule 6004(g).

**T.      Substantial Consummation**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

Dated: November 15, 2007

Respectfully submitted,

Ronald F. Stengel
Chief Restructuring Officer

Submitted by:

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Bruce Grohsgal (Bar No. 3583)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
bgrohsgal@pszjlaw.com
jfried@pszjlaw.com

Counsel for the Debtors and Debtors In Possession

# Exhibit A

# Cure Exhibit

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

<table>
<tr><td>In re:</td><td>)</td><td>Chapter 11</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Global Home Products LLC, <u>et al.</u>,[1]</td><td>)</td><td>Case No. 06-10340 (KG)</td></tr>
<tr><td></td><td>)</td><td>(Jointly Administered)</td></tr>
<tr><td>Debtors.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>**Related Docket No. ___**</td></tr>
</table>

**Objection Deadline:** _____ __, **2007 at** _____.m. ET
**Confirmation Hearing:** _____ __, **2007 at** _____.m ET

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED

PLEASE TAKE NOTICE that on November ____, 2007, the above-captioned debtors and debtors in possession in the above entitled cases (the "Debtors") filed their *First Amended Joint Plan of Reorganization of Global Home Products LLC, Under Chapter 11 of the Bankruptcy Code*, as such plan may have been amended [Docket No. 1756] (the "Plan").

PLEASE TAKE FURTHER NOTICE that the hearing on the Plan has been set for _____ ___, 2007 at ___ __.m. before the Honorable Kevin Gross, United States Bankruptcy Judge, at the United States District Court for the District of Delaware, located at 844 King Street, Courtroom No. 3, Wilmington, Delaware 19801. You have received this Notice because you are a counterpart to an executory contract or unexpired lease (an "Executory Contract") with one or more of the Debtors. You should have already received a copy of the Plan and Disclosure Statement filed

---

[1] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

in connection therewith (the "Disclosure Statement").  If you would like a copy of the Plan and/or the Disclosure Statement, contact the undersigned.

PLEASE TAKE FURTHER NOTICE that subject to the conditions set forth in the Plan, the applicable Debtor or Debtors intend to assume your Executory Contract as of the effective date of the Plan (the "Effective Date").  The amount shown on Exhibit A attached to this Notice as the "Cure Amount" for the Executory Contract listed on Exhibit A is the amount, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Executory Contract as of December ___, 2007.

PLEASE TAKE FURTHER NOTICE that if you disagree with the Cure Amount shown for the Executory Contract on Exhibit A, you must file in writing with the United States Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 Market Street, 5th Floor, Wilmington, Delaware 19801, an objection on or before 4:00 p.m. Eastern time on December ___, 2007.  In addition, any objection must set forth the specific default or defaults alleged and set forth any cure amount as alleged by you.

PLEASE TAKE FURTHER NOTICE that if you have any other objection to the applicable Debtors' assumption of the Executory Contract to which you are a party, you also must file that objection in the manner and by the date and time stated above.

PLEASE TAKE FURTHER NOTICE that any objection so filed must be served so as to be received by that same date and time upon the parties below:

a.      counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE  19899-8705 (Courier 19801), Attn: Laura Davis Jones, Esq.;

2

b.      the Office of the United States Trustee, Mark Kenney, Esq., United States Trustee's Office, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801;

c.      counsel to Madeleine L.L.C.; (a) Jesse H. Austin, III, Esq. and Kristine M. Shryock, Esq., Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308 and (b) Robert J. Dehney, Esq., Morris, Nichols, Arsht & Tunnell LLP, Chase Manhattan Centre, 1201 North Market Street, 18th Floor, Wilmington, Delaware 19801;

d.      counsel to Global Home Products Investors LLC: (a) Lawrence V. Gelber, Esq. and Sophie S. Kim, Esq., Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 and (b) Adam G. Landis, Esq. and Kerri K. Mumford, Esq., Landis Rath & Cobb LLP, 919 North Market Street, Suite 600, Wilmington, Delaware 19801; and

e.      counsel to the Official Committee of Unsecured Creditors: (a) Sharon Levine, Esq. and Kenneth A. Rosen, Esq., Lowenstein Sandler P.C., 65 Livingston Avenue, Roseland, New Jersey 07068 and (b) David M. Fournier, Esq., Pepper Hamilton LLP, 1313 Market Street, Suite 5100, Wilmington, Delaware 19801.

THE DEBTORS MAY ELECT NOT TO ASSUME THE EXECUTORY CONTRACT AT ANY TIME BEFORE OR ON THE EFFECTIVE DATE BY PROVIDING NOTICE TO ___ OF SUCH ELECTION.  AS SET FORTH IN THE PLAN, THE ASSUMPTION OF YOUR EXECUTORY CONTRACT IS EXPRESSLY CONDITIONED ON, AMONG OTHER THINGS, THE OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN.

ANY NON-DEBTOR PARTY TO ANY EXECUTORY CONTRACT WHO DOES

NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH EXECUTORY

CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.


Dated:  December ____, 2007

          PACHULSKI STANG ZIEHL & JONES LLP


          _____

          Laura Davis Jones (Bar No. 2436)
          David M. Bertenthal (CA Bar No. 167624)
          Bruce Grohsgal (Bar No. 3583)
          Joshua M. Fried (CA Bar No. 181541)
          919 North Market Street, 17th Floor
          P.O. Box 8705
          Wilmington, DE  19899-8705 (Courier 19801)
          Telephone:  (302) 652-4100
          Facsimile:  (302) 652-4400
          Email:  ljones@pszjlaw.com
                 dbertenthal@ pszjlaw.com
                 bgrohsgal@ pszjlaw.com
                 jfried@ pszjlaw.com

          Counsel for the Debtors and
          Debtors In Possession

4