# ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Global Home Products LLC, et al.,[1] | ) Case No. 06-10340 (KG) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 1810** |

## ORDER CONFIRMING FIRST AMENDED PLAN OF REORGANIZATION OF GLOBAL HOME PRODUCTS, LLC, ET AL.

The above captioned debtors and debtors in possession herein (together, the

"Debtors"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United

States Code (as amended, "Bankruptcy Code") on April 10, 2006 (the "Petition Date"); the

Debtors having filed on January 3, 2008 their *First Amended Plan of Reorganization of Global*

*Home Products, LLC et al. Under Chapter 11 of the Bankruptcy Code,* dated as of November 15,

2007, as amended ("Plan") [Docket No. 1810];[2] the Debtors' *First Amended Disclosure*

*Statement in Support of Plan of Reorganization of Global Home Products, LLC et. al., Under*

*Chapter 11 of the Bankruptcy Code* [Docket No. 1811] (the "Disclosure Statement"); the Court

having entered an order dated December 28, 2007 (the "Disclosure Statement Order"), approving

the Disclosure Statement and approving the Debtors' solicitation and voting procedures with

---

[1] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

[2] Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan. The rules of interpretation set forth in Article I.A of the Plan shall apply to this Order (this "Confirmation Order"). If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

respect to the Plan, and finding that the Disclosure Statement contained "adequate information" within the meaning of 11 U.S.C. § 1125, and the Disclosure Statement complied with all applicable non-bankruptcy laws, rules and regulations concerning the adequacy of disclosure relating to the Debtors' solicitation of the Plan and Disclosure Statement, and notice of the hearing to consider confirmation of the Plan, together with the *Affidavit of Mailing* of Laura Campbell having been filed with the Court on January 14, 2008 [Docket No. 1836] relating to service of copies of the Plan and Disclosure Statement forms of Ballots in connection with the solicitation of votes to accept or reject the Plan, and notice of the Confirmation Hearing; and the *Declaration of James Katchadurian of Epiq Bankruptcy Solutions, LLC Certifying the Ballots Accepting or Rejecting the First Amended Disclosure Statement in Support of Joint Plan of Reorganization of Global Home Products, LLC, et al., Under Chapter 11 of the Bankruptcy Code* (the "Voting Declaration") certifying (i) procedures for distribution of solicitation materials and (ii) tabulation of the Ballots received for the Plan having been filed with this Court on February 11, 2008 [Docket No. 1923]; and the Plan Supplement having been filed with this Court on February 1, 2008 [Docket No. 1876] ("Plan Supplement"); and this Court having reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Debtors' *Memorandum in Support of Confirmation of Plan of Reorganization of Global Home Products, LLC, et al. Under Chapter 11 of the United States Bankruptcy Code* filed with the Court on February 11, 2008 [Docket No. 1921] (the "Confirmation Memorandum"), and the *Declaration and Statement of Ronald F. Stengel in Support of Debtors' First Amended Joint Plan of Reorganization of Global Home Products, LLC, et al.* filed with the Court on February 11, 2008 [Docket No. 1922] (the "Stengel Declaration"), and this Court having considered any objections, oppositions and other responses

filed with respect to Confirmation of the Plan and having heard the statements of counsel in support of and in opposition to Confirmation at the Confirmation Hearing; and this Court having by this Confirmation Order overruled all objections, oppositions and other responses that were not otherwise resolved prior to or on the record at the Confirmation Hearing; and this Court having considered any testimony presented and evidence admitted by affidavits or otherwise at the Confirmation Hearing; and this Court having taken judicial notice of the papers and pleadings on file in the above-captioned Chapter 11 Cases; and it appearing to this Court that (a) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation were adequate and appropriate as to all parties to be affected by the Plan and the transactions contemplated thereby, and (b) the legal and factual bases set forth in the Confirmation Memorandum, the Voting Declaration and the Stengel Declaration as presented at the Confirmation Hearing establish just cause for the relief granted herein; this Court hereby makes and issues the findings of fact and conclusions of law set forth below:

I.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Jurisdiction and Venue.

On the Petition Date, each of the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are qualified to be debtors under section 109 of the Bankruptcy Code. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this case in the District of Delaware was proper as of the Petition Date and continues to be proper under 28 U.S.C. § 1408.

B.    Solicitation of Acceptances or Rejections of Plan

The Plan, the Disclosure Statement, the Ballots, and notice of Confirmation Hearing were transmitted and served in compliance with the Disclosure Statement Order, the Bankruptcy Code and Bankruptcy Rules. As described in the Voting Declaration, the transmittal and service were adequate and sufficient under the circumstances of the Debtors' Chapter 11 Cases.

The Debtors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Order and are entitled to the protections afforded in section 1125(e) of the Bankruptcy Code.

C.    Notice of Plan Proceedings

Notice of the Confirmation Hearing and the deadline for filing objections to confirmation of the Plan was timely served by the Debtors in compliance with the Disclosure Statement Order. All parties required to be given notice of the Confirmation Hearing (including notice of the deadline for filing and serving objections to the confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Bankruptcy Rules and Disclosure Statement Order, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

D.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code.

1.    Section 1129(a)(1) — Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates seven (7) classes and subclasses of Claims and Interests. Each

Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and for aggregating the votes within each Class. The Plan's treatment of Claims and Interests does not unfairly discriminate among holders of Claims and Interests. The Plan adequately and properly classifies all Claims and Interests required to be classified and thus satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

The Plan specifies the Classes that are unimpaired under the Plan and accordingly complies with section 1123(a)(2) of the Bankruptcy Code.

The Plan specifies the treatment of each impaired Class of Claims and Interests and accordingly complies with section 1123(a)(3) of the Bankruptcy Code.

The Plan provides for the same treatment for each Claim or Interest within a particular Class and accordingly complies with section 1123(a)(4) of the Bankruptcy Code.

The Plan provides adequate means for the Plan's implementation by setting forth provisions necessary to implement the Plan, including the vesting of assets in the Reorganized Debtors, preservation of Litigation, post-confirmation governance of the Reorganized Debtors, procedures for the resolution of Disputed Claims, and distribution procedures for Allowed Claims. Together, these provisions provide "adequate means" for implementation of the Plan. The Plan accordingly complies with section 1123(a)(5) of the Bankruptcy Code.

Section 10.Q of the Plan provides that, upon the Effective Date, each of the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Bankruptcy Code section 1123(a)(6). The

Plan therefore complies with section 1123(a)(6) of the Bankruptcy Code.

The Plan contains other appropriate provisions not inconsistent with the Bankruptcy Code in accordance with section 1123(b) including, without limitation, the substantive consolidation of the Debtors for the limited purposes as provided in Article 7.A of the Plan.

The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

2.    Section 1129(a)(2) — Compliance of the Debtor with Applicable Provisions of the Bankruptcy Code.

The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018.

The solicitation of acceptance or rejection of the Plan was in compliance with all applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation, and solicited after disclosure to Holders of Claims and in accordance with section 1126(b) of the Bankruptcy Code. Accordingly, the Debtors have properly solicited acceptances of the Plan pursuant to section 1126(b) of the Bankruptcy Code. Furthermore, the Plan was transmitted to substantially all creditors and equity security holders of each Class entitled to vote on the Plan, and a reasonable period of time was provided for such creditors and equity security holders to accept or reject the Plan. In accordance with the Disclosure Statement Order, on January 7, 2008, the Debtors commenced a solicitation of votes in respect of the Plan from the claim holders and interest holders entitled to vote on the Plan (the

"Solicitation"). The Debtors retained Epiq Bankruptcy Solutions LLC ("Epiq") to aid in conducting the Solicitation. Commencing on January 7, 2008, Solicitation Packages (defined below) were distributed by Epiq to all holders of Claims and Interests entitled to vote on the Plan (the "Voting Classes").

As part of the Solicitation, the members of the Voting Classes each were sent a solicitation package containing copies of the following documents: (i) the Plan, (ii) the Disclosure Statement, (iii) an appropriate Ballot with which to vote, and (iv) notice of the Confirmation Hearing (collectively, the "Solicitation Package"). The Disclosure Statement Order fixed February 4, 2008 as the voting deadline. The vote totals accepting the Plan that were timely received prior to the voting deadline are annexed as Exhibit A to the Voting Declaration certifying (i) procedures for distribution of solicitation materials, and (ii) tabulation of the Ballots received for the Plan.

The Ballots of holders of Claims and Interests entitled to vote on the Plan were properly solicited and tabulated. The Debtors have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by this Court in these Chapter 11 Cases. The record in these Chapter 11 Cases further discloses that the Debtors have complied with the orders of the Court entered during the pendency of the case and that the Debtors have not violated any such orders. Accordingly, the Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code.

3.    Section 1129(a)(3) — Proposal of Plan in Good Faith.

The Debtors proposed the Plan in good faith and not by any means forbidden by law. There are no pending objections before the Court objecting to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law. Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues. The Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan was proposed with the legitimate purpose of restructuring the Debtors to permit them to reorganize. Furthermore, the Plan has been accepted by the requisite holders of Claims and Interests in all Classes that actually voted on the Plan, and such acceptance evidences the informed judgment of creditors and equity security holders that the Plan is in their best interests. Therefore, the Court finds and concludes that the Plan has been proposed in good faith in compliance with section 1129(a)(3) of the Bankruptcy Code with the legitimate and honest purpose of reorganizing of the Debtors.

4.    Section 1129(a)(4) — Bankruptcy Court Approval of Certain Payments as Reasonable.

As required by section 1129(a)(4) of the Bankruptcy Code, any payment made or to be made by the Debtors or by the Committee, or by a person issuing securities or acquiring property under the Plan, to professionals retained by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, this Court as reasonable.

5.    Section 1129(a)(5) — Disclosure of Identity and Affiliations of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.

The Debtors have disclosed in the Plan Supplement the identity and affiliations of the proposed directors and officers of the Reorganized Debtors, as well as any compensation of insiders who will be employed or retained by the Reorganized Debtors. The appointment or continuance of the proposed directors and officers is consistent with the interests of Holders of Claims and Interests and with public policy. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code have been satisfied.

6.    Section 1129(a)(6) — Approval of Rate Changes.

The Plan does not provide for or contemplate any rate change that would require the approval of any regulatory agency. Therefore, the requirements of section 1129(a)(6) of the Bankruptcy Code have been satisfied.

7.    Section 1129(a)(7) — Best Interests of Creditors and Equity Interest Holders.

As required by section 1129(a)(7) of the Bankruptcy Code, with respect to each impaired Class of Claims or Interests under the Plan, each holder of a Claim or Interest of each such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

8.     Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class and Section
       1129(b) – Cramdown of Deemed Rejecting Classes.

All holders of Claims and Interests impaired under the Plan have been given

adequate opportunity to vote to accept or reject the Plan. As demonstrated in the Voting

Declaration, the Plan has been accepted, within the meaning of section 1126(c) of the Bankruptcy

Code, by the holders of Claims in Classes 2, 3, 4 and 5. Madeleine affirmatively voted in favor

of the Plan and has consented to the treatment of the Madeleine Secured Claim as provided under

the Plan. Classes 6(A) and 6(C) are unimpaired and therefore, deemed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code. No Class of Creditors voted to reject the

Plan. Class 6(B) did not vote to accept the Plan. The Plan provides that the Holders of Interests

in Class 7 will not receive or retain any property on account of such Interests, Class 7 is deemed

not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Notwithstanding the nonacceptance of the Plan by Classes 6(B) and 7, the Plan is

confirmable because it satisfies section 1129(b)(1) of the Bankruptcy Code with respect to those

Classes. The Plan does not discriminate unfairly and is fair and equitable with respect to Classes

6(B) and 7. Members of Class 6(B) had the opportunity to subscribe to the Rights Offering in

order to retain their Class 6(B) Non-GHPI Equity Interests, but no members of Class 6(B)

elected to subscribe to such Rights Offering. In addition, there is no Holder of a Claim or

Interest junior to Classes 6(B) and 7 who will receive or retain any property under the Plan on

account of such junior Claim or Interest. As such, the treatment afforded non-consenting

Interests in Classes 6(B) and 7 comports with section 1129(b)(2)(C) of the Bankruptcy Code.

Accordingly, the Plan may be confirmed notwithstanding the nonacceptance of the Plan by

Classes 6(B) and 7.

The Voting Declaration indicates that Class 1 was not included in the voting tabulation because the total dollar amount of Ballots cast in Class 1 totaled $0, notwithstanding that more than 50% of the voting members of Class 1 voted to accept the Plan. However, even to the extent that (i) Class 1 was entitled to vote on the Plan and (ii) is deemed not to have accepted the Plan, the Plan may nonetheless be confirmed because the Plan provides that all Holders of Allowed Claims in Class 1 (if any) will receive or retain on account of such Claims, value as of the Effective Date, equal to any allowed amount of their Class 1 Claims. Therefore, the Plan may be confirmed under section 1129(b)(2)(B) to the extent that Class 1 was entitled to vote on the Plan and did not accept the Plan.

9.    Section 1129(a)(9) — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.

The Plan provides for treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims entitled to priority pursuant to section 507 of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

10.    Section 1129(a)(10) — Acceptance by at Least One Impaired Class.

As indicated in the Voting Declaration, Classes 3, 4 and 5 are impaired Classes that have each voted to accept the Plan, excluding votes cast by insiders. Accordingly, at least one Class of Claims or Interests that is Impaired under the Plan has accepted the Plan, in compliance with section 1129(a)(10) of the Bankruptcy Code.

11.    Section 1129(a)(11) — Feasibility of the Plan.

The Plan does not provide for the liquidation of all or substantially all of the

property of the Debtors. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors, the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan. It appears that the Reorganized Debtors will possess sufficient Effective Date Cash to make all payments due on the Effective Date and to satisfy obligations under the Plan. Accordingly, the Plan presents a workable scheme of organization and operation and complies with section 1129(a)(11) of the Bankruptcy Code.

12.    Section 1129(a)(12) — Payment of Bankruptcy Fees.

The Plan provides that all fees payable under 28 U.S.C. §1930 have been paid or will be paid on or before the Effective Date, and all such fees that arise after the Effective Date, but before the closing of the Chapter 11 Cases shall be paid by the Reorganized Debtors. The Debtors or the Reorganized Debtors have adequate means to pay all such fees. The Plan thus complies with section 1129(a)(12) of the Bankruptcy Code.

13.    Section 1129(a)(13) — Retiree Benefits.

The Debtors do not maintain any "retiree benefits" as defined in section 1114(a) of the Bankruptcy Code. The Plan thus complies with section 1129(a)(13) of the Bankruptcy Code.

E.    Rights Offering for Class 6(B) Equity Interests

The Plan provided for the opportunity for Holders of Class 6(B) Non-GHPI Equity Interests to subscribe to a rights offering in order for such Holders to retain such Equity Interests in the Reorganized Debtors by (i) agreeing, in writing on or before three (3) days prior to the Confirmation Hearing to subscribe to the rights offering and to commit to pay their Pro Rata portion of Effective Date Cash in order to retain their Non-GHPI Equity Interests, and (ii) paying the dollar amount of the percentage of Effective Date Cash that is equal to ownership percentage

of the subscribing Holder's Non-GHPI Equity Interests in order to retain such Holder's Non-GHPI Equity Interests (the "Rights Offering"). No Non-GHPI Equity Interest Holders subscribed to the Rights Offering, either timely or otherwise.

F.    Exemptions from Taxation

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, including any transfer from Debtors to the Reorganized Debtors or any other person or entity pursuant to the Plan, is exempt from taxation under any law imposing a stamp tax or similar tax, in accordance with section 1146(a) of the Bankruptcy Code.

G.    Good Faith Solicitation

The Debtors have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors and each of their affiliates, agents, directors, officers, employees, investment bankers, financial advisors, attorneys, and other professionals (acting in such capacity) have participated in such solicitation in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code in connection with the Rights Offering.

H.    Releases

The releases and discharges by the Committee, the Debtors, their estates, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representative, pursuant to Article 8.C.a of the Plan are supported by good and valuable consideration, the adequacy of which is hereby confirmed, are fair, equitable, reasonable and integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with

the Plan.

The releases and discharges by Holders of Claims and Interests pursuant to Article 8.C.b of the Plan are supported by good and valuable consideration, the adequacy of which is hereby confirmed, are fair, equitable, reasonable and integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan, and shall be effective and binding on each Holder of a Claim or Interest that voted to accept the Plan.

Without limiting the generality of the foregoing, the Cerberus Released Parties have made substantial contributions to the reorganization of these Chapter 11 Cases with respect to the funding the Plan by GHPI of Effective Date Cash and Madeleine's agreement to subordinate its Claim for distribution purposes pursuant to section 3.B.2 of the Plan without both of which confirmation of the Plan would not be possible. The releases granted to the Cerberus Released Parties were an integral part of the agreement for GHPI to fund the Effective Date Cash under the Plan and for Madeleine to agree to subordinate its Claim for distribution purposes under section 3.B.2 of the Plan. This substantial contribution is sufficient to support releases granted to the Cerberus Released Parties as provided under the Plan.

I.    Injunction and Limitation of Liability

The injunction provisions set forth in Article 8.E of the Plan are supported by good and valuable consideration, the adequacy of which is hereby confirmed, and are fair, equitable, reasonable and integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan.

The exculpation and limitation of liability provisions set forth in Article 8.F of the Plan are supported by good and valuable consideration, the adequacy of which is hereby

confirmed, and are fair, equitable, reasonable and integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan.

J.    Substantive Consolidation

Substantive consolidation of the Debtors' Chapter 11 Cases for the limited purposes set forth in Article 7.A of the Plan is in the best interests of the Debtors, their estates their creditors, and all other parties in interest in the Chapter 11 Cases.

K.    Compromise of Controversies

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan are a good faith compromise and settlement of all Claims arising prior to the Petition Date, including without limitation, the compromise and settlement of Allowed 503(b)(9) Claims pursuant to Article 5.T of the Plan. Such compromises and settlements are in the best interests of the Debtors, their Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness, and satisfy the standards required under *In re Martin,* 91 F.3d 389 (3rd Cir. 1996).

L.    Satisfaction of Conditions to Confirmation

Each and every condition precedent to the confirmation of the Plan has been satisfied or waived.

## II.

## ORDER

Based upon the record of the Confirmation Hearing, all the proceedings held before this Court in the Chapter 11 Cases, and the foregoing findings of fact and conclusions of law,

## IT IS HEREBY ORDERED THAT:

A.    Approval of Solicitation of Votes on Plan

The Debtors' solicitation of acceptances of the Plan pursuant to section 1126(b) of the Bankruptcy Code is hereby approved.

B.    Confirmation of the Plan

The Plan and each of its provisions shall be, and hereby are, confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code, and each term and provision of the Plan shall be, and hereby is, valid and enforceable pursuant to its terms; *provided, however,* that if there is any direct conflict between the terms of the Plan, and this Confirmation Order, the terms of this Confirmation Order shall control. All objections and responses to, and statements and comments regarding, the Plan, to the extent not already withdrawn, are hereby overruled. The record of the Confirmation Hearing is hereby closed. The Debtors are authorized to implement the Plan in accordance with the terms thereof and to take any and all actions contemplated to be taken by it under the Plan.

In accordance with section 1141 of the Bankruptcy Code, to the maximum extent permitted by applicable law, the Plan and the provisions thereof shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, without limitation, the Reorganized Debtors, any person acquiring or receiving property under the Plan, any party to a contract with the Debtors, any lessor or lessee of property to or from the Debtors and any holder of a Claim against or an Interest in the Debtors, and all other parties-in-interest in the Chapter 11 Cases, whether or not such holder, person, party, lessor, lessee or party-in-interest will receive or retain

any property or interest in property under the Plan, such Claim or Interest is Impaired under the Plan, or such holder, person, party, lessor, lessee or party-in-interest has filed a proof of Claim or has accepted the Plan.

C.    Matters Relating to Implementation of the Plan

    1.    Continued Corporate Existences.

    The Reorganized Debtors shall continue to exist after the Effective Date as separate corporate entities, in accordance with applicable law in the States in which such entities are incorporated, respectively, and with all the rights, powers and privileges of corporations under such laws.

    2.    Vesting of Assets.

    Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, the Plan Assets and any other property of the Estates shall revest in the Reorganized Debtors, free and clear of all Claims and Liens other than those Liens recognized by the Plan, *provided, however,* that (i) Plan Assets shall be held by the Reorganized Debtors and shall be distributed only in accordance with the Plan, and (ii) except with respect to the Madeleine Secured Claim, all Plan Assets shall constitute property of the Reorganized Debtors, free and clear of the Claims of any Creditors and Liens provided that the funds deposited in the Claims Reserve Account and Segregated Claims Reserve Account shall be used to fund distributions as provided in the Plan. Any remaining amount of the $4,000,000 Effective Date Cash, after payment of all Allowed Administrative Claims and Allowed Priority Tax Claims, shall revest in the Reorganized Debtors free and clear of all Claims and Liens other than those Liens recognized by the Plan. All right, title and interest in any of the Debtors' net operating

losses shall be retained exclusively by the Reorganized Debtors. Allowed Claims under the Plan shall be satisfied exclusively and solely from the Effective Date Cash in the amounts provided for in the Plan for distributions to the Holders of such Claims and not from any other Plan Assets, *provided, however*, that Holders of Allowed Class 5 Claims shall also be entitled to a Pro Rata distribution of any Net Chapter 5 Recoveries at such times deemed appropriate by the Reorganized Debtors after the Effective Date.

      3.     Provisions of Plan Binding on Third Parties.

      The provisions of the confirmed Plan shall be binding on and inure to the benefit of the Debtors, all present and former Holders of Claims against and Equity Interests and Subsidiary Equity Interests in the Debtors, whether or not such Holders will receive or retain any property or interest in property under the Plan, their respective successors and assigns, including, without limitation, the Reorganized Debtors, and all other parties in interest in the Chapter 11 Cases, to the maximum extent permitted by applicable law, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Equity Interest Holder is Impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be as fixed and adjusted pursuant to the Plan. Pursuant to section 8.L of the Plan, with respect to any Taxes of the kind specified in Bankruptcy Code section 1146, the Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated under the Plan is to be recorded.

4.    Sole Source of Funding

On or as soon as practical following the Effective Date, the Claims Reserve

Account and the Segregated Claims Reserve Account shall be opened by the Disbursing Agent

and funded in such amounts as provided under the Plan. The sole source of funding for the

Claims Reserve Account and the Segregated Claims Reserve Account will be from the Effective

Date Cash, *provided, however,* that each holder of an Allowed Class 5 Unsecured Claim is also

entitled to receive its Pro Rata share of eighteen percent (18%) of any Net Chapter 5 Recoveries.

The $3.5 million in Effective Date Cash allocated for distribution to Class 4 pursuant to the Plan

shall be the sole and exclusive source of payment of all Allowed Class 4 503(b)(9) Claims.

The Madeleine Secured Claim shall be deemed an Allowed Claim as of the

Effective Date and remain secured by substantially all of the Reorganized Debtors' assets to the

same extent and validity as existed prior to the Effective Date pursuant to the Madeleine Loan

Agreement, *provided, however,* that satisfaction and repayment of the Madeleine Secured Claim

by the Reorganized Debtors will be on such terms as may be agreed upon by Madeleine and the

Reorganized Debtors and shall be subordinated for distribution purposes to the treatments

provided for Allowed Claims under the Plan for payments made from the Claims Reserve

Account and Segregated Claims Reserve Account, but solely to the extent thereof.

5.    Full and Final Satisfaction of Claims

Commencing upon the Effective Date, the Disbursing Agent shall be authorized

and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims

according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtors shall

be deemed fixed and adjusted pursuant to the Plan and the Debtors shall have no further liability on account of any Claims or Interests except as set forth in the Plan. All payments and all distributions made by the Disbursing Agent under and in accordance with the Plan shall be in full and final satisfaction, settlement, release, and discharge of all Claims.

6.      Distribution Procedures

Except as otherwise agreed by the Holder of a particular Claim, or as provided in the Plan, all amounts to be paid by the Disbursing Agent under the Plan shall be distributed in such amounts and at such times as is reasonably prudent as determined by the Disbursing Agent. On the Effective Date, or as soon as practicable thereafter, the Disbursing Agent shall: (a) establish and fund the Segregated Claims Reserve Account and the Claims Reserve Account from the Effective Date Cash in accordance with the provisions of the Plan; and (b) promptly as practicable pay, in full satisfaction of their respective claims, the Holders of (i) Allowed Administrative Claims, (ii) Allowed Priority Tax Claims, (iii) Allowed Class 1, Class 4 and Class 5 Claims.

7.      Distributions

Unless otherwise agreed by the Reorganized Debtors, Madeleine and GHPI, the Effective Date Cash allocated to satisfy Claims in accordance with, and subject to, the provisions of the Plan, shall be the sole and exclusive source of distributions to Holders of Claims; *provided, however*, that the Disbursing Agent shall only distribute such Effective Date Cash to the Holders of Allowed Claims in such amounts and at such times as are set forth in the Plan. No payments or distributions shall be made by the Disbursing Agent on account of Disputed Claims unless and to the extent such Claims become Allowed Claims. Any Effective Date Cash reserved for

payment of any Disputed Claims will be held in the Claims Reserve Account or the Segregated Claims Reserve Account, as applicable, by the Disbursing Agent in accordance with the Plan pending resolution of such Disputed Claims.

8.    Cancellation of Non-GHPI Equity Interests.

On the Effective Date, all Non-GHPI Equity Interests, shall be cancelled and of no further force or effect without any further action on the part of the Bankruptcy Court or any person.

9.    Transactions Required by the Plan.

The Debtors (including the Reorganized Debtors) are authorized to take any and all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, or the transactions required by the Plan, each of which shall be implemented in accordance with the Plan and this Confirmation Order. The Reorganized Debtors are hereby authorized and directed to enter into all agreements and other instruments contemplated by or to be entered into pursuant to the Plan without need for further action by the Reorganized Debtors' directors or shareholders or otherwise.

In accordance with section 1142 of the Bankruptcy Code, the Reorganized Debtors are authorized, empowered and directed to execute, deliver, acknowledge, adopt, ratify, certify, file and record any document and to take any other action necessary or appropriate to implement, consummate and otherwise give effect to the Plan in accordance with their terms in all material respects, whereupon such documents, agreements and instruments shall be legal, valid and binding obligations of the parties thereto and enforceable in accordance with their terms

except as enforceability may be affected by bankruptcy, insolvency, or other laws of general

application affecting the rights of creditors generally.

          10.     Exemptions from Transfer Taxes.

          Pursuant to section 1146(a) of the Bankruptcy Code, and, to the maximum extent

permitted by applicable law, any transfers from the Debtors to the Reorganized Debtors or any

other person or entity pursuant to the Plan shall not be subject to any document recording tax,

stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer

tax, mortgage recording tax, franchise tax required to be paid before filing or recording of any

document, or other similar tax or governmental assessment.  All appropriate state or local

governmental officials or agents shall forego the collection of any such tax or governmental

assessment and shall accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax or governmental assessment.

          11.     Distributions; Resolutions of Disputed Claims and Interests.

          The provisions in Article 5 of the Plan governing distributions, reserves and the

procedures for resolving and treating Disputed Claims and Interests under the Plan are hereby

approved.

D.     Preservation of Causes of Action

          Except as otherwise provided in the Plan, all Litigation shall be preserved pursuant

to section 1123(b) of the Bankruptcy Code.

          Non-Chapter 5 Claims Litigation shall be retained by the Reorganization Debtors

for their sole and exclusive benefit.  From and after the Effective Date, all non-Chapter 5 Claims

Litigation may be prosecuted or settled by the Reorganized Debtors in their sole discretion and at

their sole expense. To the extent any non-Chapter 5 Claims Litigation is already pending on the Effective Date, the Reorganized Debtors as successor to the Debtors may continue the prosecution of such Litigation.

E.      Discharge of Debtors

Except as otherwise provided in the Plan or in this Confirmation Order, rights afforded in, and all consideration distributed under, the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties. Regardless of whether property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtors shall each be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is Allowed under section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted the Plan.

F.      Releases

1.      Releases by the Debtors and Committee.

Except to the extent provided in section 8.D of the Plan, on the Effective Date (i) the Committee, the Debtors, their estates, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives, shall be deemed to have released and discharged GHPI, Cerberus Partners, L.P., Cerberus Capital Management, L.P.,

Madeleine (collectively, the "Cerberus Released Parties"), and any of their affiliates and present

and former officers, directors, managers, shareholders, agents, representatives, consultants,

advisors, accountants, counsel, and employees, and the past and present members of the Board of

Directors of each of the Debtors from any and all claims, causes of action, demands, losses,

whether known or unknown, in law or equity, against any of the Cerberus Released Parties or any

past or present member of the Board of Directors of each of the Debtors, based in whole or in

part upon any act or omission arising from or in connection with or in any way relating to the

Debtors; and (ii) the Debtors, their estates and all creditors, and their respective officers and

directors, shareholders, agents, representatives, consultants, counsel and employees, shall be

deemed to have released and discharged the Committee and each Committee member (solely in

such capacity) from any and all claims, causes of action, demands, losses, whether known or

unknown, in law or equity, against each other based in whole or in part upon any act or omission

arising from or in connection with or in any way to the Debtors.

      2.    <u>Other Releases.</u>

      Except to the extent provided in section 8.D of the Plan, as of the Effective Date,

for good and valuable consideration, the adequacy of which is hereby confirmed, to the

maximum extent permitted by applicable law, each Holder of a Claim or Equity Interest that

affirmatively voted in favor of the Plan, shall have agreed to forever release, waive and discharge

the Released Parties of and from all claims, obligations, suits, judgments, damages, demands,

debts, rights, causes of action and liabilities whatsoever in connection with or related to the

Debtors (including Reorganized Debtors), the Chapter 11 Cases, or the Plan whether liquidated or

unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or

unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transition, event or other occurrence taking place on or prior to the Effective Date in connection with the Chapter 11 Cases, or the formulation, preparation, dissemination, solicitation, implementation, Confirmation or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Cases; *provided, however*, that the foregoing shall not operate as a waiver or release from any causes of action arising out of (i) any express post-Effective Date contractual obligation owing by any such present or former director, officer, employee, agent, financial advisors, attorneys or professional of the Debtors or the Committee or its members, agents, advisors, attorneys or, (ii) the willful misconduct or gross negligence of such present or former director, officer, employee, agent, attorneys or professional of Debtors or the Committee or its members, agents, advisors or attorneys, as determined by Final Order of a court of competent jurisdiction.

G.    Injunctions

Except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtors, the Reorganized Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any of the Released Parties, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection or

recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Released Parties, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Estates, or any property of the Debtors, the Reorganized Debtors, or the Estates, with respect to any such Claim or Equity Interest, except to the extent provided in the Plan with respect to any potential setoff by a Holder of Allowed 503(b)(9) Claim of any unpaid amount of such Allowed 503(b)(9) Claim to the extent provided in section 5(U) of the Plan; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Nothing contained in this section shall prohibit the Holder of a timely-filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Reorganized Debtors under the Plan. Any person or Entity injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees from the willful violator. In accordance with the foregoing, except as provided in the Plan or this Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and Non-GHPI Equity Interests and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and

such discharge shall void any judgment obtained against any Debtor at any time, to the extent such judgment relates to a discharged Claim or terminated Equity Interest.

      1.    Post-Confirmation Limitation of Reorganized Debtors.

      The Reorganized Debtors, Disbursing Agent and their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals shall not be liable for any liability, loss, damage, claim, cause of action, cost and expense, including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims, Equity Interests or Subsidiary Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under the Plan, except that the Reorganized Debtors, the Disbursing Agent and their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals may be liable for actions or inactions that are grossly negligent or which constitute willful misconduct. Any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct.

      2.    Safe Harbor.

      The Debtors and each of their affiliates, agents, directors, officers, employees, investment bankers, financial advisors, attorneys, and other professionals have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer of the Rights Offering under the Plan, and, therefore, are not, and on account of such offer and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or in connection

with the Rights Offering under the Plan.

H.      Executory Contracts and Unexpired Leases

1.      Assumed Contracts, Unexpired Leases and Passed Through Rights.

Each executory contract and unexpired lease entered into by Debtors prior to the

Petition Date that has not previously expired or terminated pursuant to its own terms, shall be

deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date, except

with respect to executory contracts or unexpired leases that: (i) were previously assumed or

rejected by prior orders of the Bankruptcy Court, (ii) are subject to a pending motion to assume

or reject, pursuant to section 365 of the Bankruptcy Code, on the Confirmation Date, or (iii) are

identified in any Plan Supplement filed by the Debtors as (A) a contract to be assumed by one or

more of the Reorganized Debtors or (B) a contract that will neither be assumed nor rejected, and

which will ride through the Chapter 11 Cases and will not be altered or modified by the Plan.

Nothing in the Plan or this Confirmation Order shall be construed as an

acknowledgement that a particular contract or agreement is executory or is properly characterized

as a lease or an executory contract, as the case may be. This Confirmation Order shall constitute

an order of the Bankruptcy Court approving such rejections (or such assumptions, as the case

may be) pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The non-

Debtors parties to any rejected personal property leases shall be responsible for taking all steps

necessary to retrieve the personal property that is the subject of such executory contracts and

leases.

Payment of the cure amounts (if any) required to cure any executory contract and

unexpired leases that may be the subject of a motion to assume such contact or lease shall (a)

effect a cure of all defaults existing as of the Effective Date; (b) compensate for any actual

pecuniary loss to the counterparty to the Assumed Contract resulting from such default, (c)

together with the assumption of the Assumed Contract, constitute adequate assurances of future

performance thereof, and (d) shall be forever binding on the counterparty to the Assumed

Contract.

        2.      Rejected Contracts and Leases.

All Proofs of Claim with respect to Claims arising from the rejection of executory

contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be Filed with the

Bankruptcy Court within **thirty (30)** days after the earlier of the date of the Effective Date or

entry of an order of the Bankruptcy Court approving such rejection. Any Claims arising from the

rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is

not Filed within such times will be forever barred from assertion against Debtors, the

Reorganized Debtors, the Estate, or the property of any of them. All such Claims for which

Proofs of Claim are timely and properly Filed and ultimately Allowed will be treated as Class 5

Unsecured Claims subject to the provisions of Article 3 of the Plan. Notwithstanding the

foregoing, nothing in the Plan shall be deemed to extend or otherwise affect any bar date or

deadline ordered by the Court with respect to the filing of any Claims for rejection damages for

executory contracts and unexpired leases previously rejected by the Debtors.

I.      Approval of Compromises of Controversies

        The provisions of the Plan, which constitute a good faith compromise and

settlement of all Claims arising prior to the Petition Date, and all other compromises and

settlements provided for in the Plan, are hereby approved pursuant to Bankruptcy Rule 9019.

J.    Substantive Consolidation

On the Effective Date, the Debtors will be deemed substantively consolidated

solely for voting and distribution purposes only pursuant to section 7.A of the Plan.  The Debtors

shall continue to maintain their separate corporate existences for all purposes other than with

respect to voting on the Plan and the treatment of Claims under the Plan and any associated

distributions thereunder.  Pursuant to the Confirmation Order, on the Effective Date, (i) all

intercompany claims by or against any Debtor will be deemed withdrawn and disallowed for

distribution purposes pursuant to the Plan; (ii) all Plan Assets to be used for distributions to

Creditors of any of the Debtors will be treated as though they were merged into the Reorganized

Debtors; (iii) any obligation of any Debtor and all guarantees thereof executed by, or joint

liability of, any of the Debtors will be treated as one obligation of the Reorganized Debtors for

distribution purposes pursuant to the Plan; and (iv) any Claims filed against any Debtors shall be

treated as a single Claim filed against the Reorganized Debtors for distribution purposes pursuant

to the Plan.  The substantive consolidation of the Debtors for voting and distribution purposes

shall not affect or impair any rights, Claims or remedies or defenses of (or between) the separate

Debtors as of the Petition Date, including with respect to any Litigation.

K.    Administrative Claims Bar Date

The deadline pursuant to which any Administrative Claims arising as of August 2,

2007, through and including the Effective Date and that is not a Professional Fee Claim (which

bar date is addressed in section 2.L of this Confirmation Order), shall be **thirty (30)** days from

the Effective date, *provided, however,* that nothing in the Plan or this Confirmation Order shall be

deemed to extend or otherwise affect any Administrative Claims Bar Date, or any deadline in

connection therewith ordered by the Court.

L.    Professional Fee Claims

Professionals requesting compensation or reimbursement of expenses pursuant to

sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior

to the Effective Date must File and serve pursuant to the notice provisions of the Interim Fee

Order, an application for final allowance of compensation and reimbursement of expenses no

later than **sixty (60)** days after the Effective Date. All such applications for final allowance of

compensation and reimbursement of expenses will be subject to the authorization and approval of

the Bankruptcy Court.

M.    Modification

Subject to further orders of the Court, at any time prior to substantial

consummation of the Plan, the Debtors or Reorganized Debtors may apply to the Bankruptcy

Court to modify the Plan or any exhibits thereto in accordance with Article 10 of the Plan and

section 1127 of the Bankruptcy Code, to remedy defects or omissions in the Plan or to reconcile

inconsistencies in the Plan, Disclosure Statement or the Confirmation Order, or to accomplish

such matters as may be necessary to carry out the purposes and effects of the Plan.

N.    Notices

1.    Entry of Confirmation Order.

As soon as practicable after the Confirmation Date, the Debtors shall mail notice

of the entry of this Confirmation Order to all parties entitled to notice pursuant to Bankruptcy

Rules 2002(f) and 3020(c).

3.      Occurrence of Effective Date.

As soon as reasonably practicable after the Effective Date, the Reorganized

Debtors shall mail notice of the occurrence of the Effective Date to all parties entitled to notice

pursuant to Bankruptcy Rules 2002(f) and 3020(c).

O.      Construction of Order

The failure to reference a particular provision of the Plan in this Confirmation

Order shall not affect the validity or enforceability of such provision.  Each provision of the Plan

shall be deemed authorized and approved by this Confirmation Order and shall have the same

binding effect of every other provision of the Plan, whether or not mentioned in this

Confirmation Order.

P.      Order Effective Upon Entry; Effect of Reversal or Modification

This Confirmation Order shall be effective and enforceable upon entry, and shall

not be stayed, under Bankruptcy Rule 3020(e) or otherwise, unless otherwise expressly ordered

by this Court.

If any or all of the provisions of this Confirmation Order are hereafter modified,

vacated or reversed by subsequent order of this or any other court, such reversal, modification or

vacation shall not affect the validity of the acts or obligations incurred or undertaken under or in

connection with the Plan prior to the Debtors' receipt of written notice of any such order, nor

shall such reversal, modification or vacation of this Confirmation Order affect the validity or

enforceability of such act or such obligations.  Notwithstanding any reversal, modification or

vacation of this Confirmation Order, any such act or obligation incurred or undertaken pursuant

to and in reliance on this Confirmation Order prior to the Effective Date of such reversal, modification or vacation shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all documents, instruments and agreements related thereto or any amendments or modifications thereto.

Q.    Retention of Jurisdiction

Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court hereby retains jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan after the Effective Date to the full extent provided for under the Plan and applicable law.

R.    Nonseverability

The provisions of this Confirmation Order are nonseverable and mutually dependent.

Dated:    February **18** , 2008

_____
HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE